Darin Gary **WALKER** and Rebecca Walker, Plaintiffs,

v.

Dennis C. **HUIE**, in his individual capacity; Roderic C. Hunt, in his individual capacity; Salt Lake City Corporation, a municipality; and Anna Weidaur, in her individual capacity, Defendants.

Civ. No. 91–C–425B.

United States District Court, D. Utah, C.D.

June 11, 1992.

Ross C. Anderson, Steven W. Dougherty and Timothy W. Miller, Salt Lake City, for plaintiffs.

Bryon J. Benevento, John T. Nielsen, Randall K. Edwards, Steven W. Allred and Roger F. Cutler, Salt Lake City, for defendants.

## MEMORANDUM DECISION AND ORDER

DEE V. BENSON, District Judge.

On April 29, 1992, a hearing was held on defendant Dennis C. Huie and Officer David Greer's Motion for Protective Order before the Honorable Dee Benson. Ross C. Anderson and Timothy W. Miller represented the plaintiff. Byron J. Benevento and John T. Nielson represented Huie and Greer for the purpose of this motion only.

### STATEMENT OF FACTS

Late on September 13, 1990, Salt Lake City Police Officers Dennis Huie and Roderic Hunt were dispatched to the apartment of the plaintiffs, Darin and Rebecca Walker. The officers arrived at approximately midnight. When they arrived, Re-

becca Walker allegedly informed them that everything was okay; however, she allowed the officers into her apartment. The officers requested Mrs. Walker's identification and received it. Mr. Walker refused to identify himself, but Mrs. Walker identified him as her husband. The officers believed they should authenticate Mr. Walker's identification and again requested that Mr. Walker identify himself. When he failed to do so, the officers attempted to place him under arrest.

Mr. Walker claims he was grabbed by the officers, thrown to the couch, and handcuffed. He further alleges that he was thrown to the floor and struck with a metal club or other similar object. He also claims he was held down on the floor by one officer while the other officer hit him in the face. He maintains he was then thrown down one flight of stairs and dragged down two others. Mrs. Walker claims she was physically restrained and threatened by the officers when she tried to help her husband. The officers respond that Mr. Walker forcefully resisted arrest, and they were required to use force to place handcuffs on Mr. Walker and carry out the arrest.

Mr. Walker was taken to jail where he was charged with failure to provide identification and resisting arrest. Mr. Walker subsequently pleaded *nolo contendre* to a reduced charge of disorderly conduct. Subsequent to Mr. Walker's arrest, he was treated at the University Medical Center for wrist, neck, head and back injuries he allegedly sustained in the incident.

After Mr. Walker's arrest, Mrs. Walker filed a complaint with the Salt Lake City Police Department pertaining to the arrest of her husband. The Police Department investigated the complaint, and interviewed Officer Huie. Following his interview, Officer Huie sought the assistance of Officer David Greer, President of the Salt Lake Police Association ("Association"). Officer Greer agreed to represent Officer Huie at the proceedings before the Chief of Police and in connection with the Department's investigatory and disciplinary proceedings. There is a Memorandum of Understanding between Salt Lake City and the Association which recognizes that a representative of the Association may represent a police officer in a disciplinary proceeding and that any communication between the officer and representative of the Association would be confidential. Rather than being represented by the Association president, Officer Huie could have chosen to represent himself or obtained the services of an attorney. Following the disciplinary proceeding, the complaint against Officer Huie was sustained, and the Internal Affairs Division of the Police Department recommended that he be reprimanded. Officer Huie was subsequently exonerated after an appeal of his case.

In March 1991, the Walkers filed suit in this court. During discovery, the plaintiffs subpoenaed Officer Greer to appear and testify at a deposition. Officers Huie and Greer filed this Motion for a Protective Order claiming that any conversations between them are privileged.

## CONCLUSIONS OF LAW

Officers Huie and Greer argue that the court should grant their Motion for Protective Order because: 1) the communications are protected by a common law privilege comparable to the attorney-client privilege; 2) the communications fall within the executive and/or official information privilege; and 3) a fundamental right to privacy protects the communications. The court will address their claims seriatim.

### A. *Attorney–Client Privilege*

Whether the communication between Officers Greer and Huie should be covered by a common law privilege akin to the attorney-client privilege may be analyzed in two ways. The court could either decide to create a new privilege or it could extend the current attorney-client privilege to encompass the relationship between Officers Greer and Huie.

#### 1. Creation of a New Privilege.

Federal evidentiary privileges are addressed in Federal Rule of Evidence 501 which states in pertinent part:

... the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

■ The United States Supreme Court observed that Rule 501 grants the federal courts the authority to "continue the evolutionary development of testimonial privilege." *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980). Furthermore, the Court recognized that Congress, in enacting Rule 501 "manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis.'" *Id.* at 47, 100 S.Ct. at 911 (citing 120 Cong.Rec. 40891 (1974)). Although this court has flexibility in considering whether to create a privilege, this flexibility must be exercised with caution.

The Supreme Court explained further in *Trammel:*

[t]estimonial exclusionary rules and privileges contravene the fundamental principle that "the public ... has a right to every man's evidence." *United States v. Bryan*, 339 U.S. 323, 331 [70 S.Ct. 724, 730, 94 L.Ed. 884] (1950). As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurther, J., dissenting.)

*Id.*, 445 U.S. at 50, 100 S.Ct. at 912.

Professor Wigmore has described four criteria which are useful in analyzing and determining whether this court should create a new evidentiary privilege:

(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of the litigation.

8 J.H. Wigmore, *Evidence in Trials at Common Law*, § 2285 (McNaughton Revision 1961) (emphasis in original).

Turning to criteria one and two, Officer Huie asserts in his affidavit that he believed his discussions with Officer Greer were strictly confidential. He further claims that had he not been assured that the communications with Officer Greer would remain confidential, he would not have made the communications nor sought the advice and representation of Officer Greer. Officer Greer states in his affidavit that he has represented several Salt Lake City Police Officers in investigative and grievance proceedings, and his communications with them have always been free and open based on the understanding that they would remain confidential. It is clear from these affidavits that both of these officers intended that their communications remain confidential. Furthermore, both of them maintain that the confidentiality is essential for the relationship between them. Although one could perhaps envision a satisfactory union representation relationship without confidentiality, their position seems to be well taken. Accordingly, based on these affidavits, Professor Wigmore's first two criteria are met—the communications originated in confidence and the confidentiality is essential "to the full and satisfactory maintenance of the relation between the parties."

Officers Greer and Huie also argue that criteria three and four are met. The court does not agree. With respect to the third criteria, there is no showing that this relationship is one that "the community ought to sedulously foster." This is not the type of relationship such as an attorney-client, husband-wife, or clergy-communicant that

over time the common law has considered important enough to sustain as privileged. The communication in this case is no more deserving of a privilege than other important relationships that courts have found are not privileged. *See, e.g., University of Pennsylvania v. Equal Employment Opportunity Comm'n,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (Supreme Court refused to recognize a peer review privilege); *United States v. Arthur Young & Company,* 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) (Supreme Court declined to adopt an accountant work-product privilege); *In re Grand Jury Proceedings of John Doe v. United States,* 842 F.2d 244 (10th Cir.), *cert. denied* 488 U.S. 894, 109 S.Ct. 233, 102 L.Ed.2d 223 (1988). (Asserting that the parent-child and family privileges were never recognized at common law, the court refused to find a parent-child or family privilege). In addition, this relationship is not one that the Supreme Court found important enough to address in its Article V of the Proposed Rules of Evidence which dealt with evidentiary privileges. The Supreme Court suggested, among others, the following privileges: attorney-client privilege, psychotherapist-patient privilege, physician-patient privilege, husband-wife privilege, communications to clergy, and political vote. Rules 503, 504, 505, 506, and 507 Proposed Federal Rules of Evidence. While counseling at police disciplinary proceedings is important, it simply does not rise to the level of the special relationships heretofore protected by the federal common law privileges.

With respect to criteria four, there will no doubt be injury to the relationship between police officers and their union representatives. However the court does not find that that injury is greater than the benefit gained "for the correct disposal of the litigation." Therefore, the court does not find that it is justified in creating a new evidentiary privilege.

### 2. Expansion of the Attorney–Client Privilege.

█ While the court holds that a new privilege is inappropriate, it could still conclude that the existing attorney-client privi-

lege already encompasses the relationship between Officers Greer and Huie. Rule 501 not only requires the court to follow the common law to determine what privileges exist, it also requires the court to determine the scope of the privileges. Article V of the proposed Supreme Court Rules included among its proposed privileges the attorney-client privilege. Judge Weinstein states in his often-cited treatise that the Proposed Rules "are a convenient, comprehensive guide to the federal law of privileges as they now stand." 2 Weinstein & Berger, *Commentary on Rules of Evidence for the United States Courts and for State Courts,* ¶ 501[03], p. 501–34 (1991). The proposed lawyer-client privilege defines lawyer and client as follows:

> A "client" is a person ... who is rendered legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him.
>
> A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.

46 F.R.D. 161–163 (1969).

There is no suggestion here that Officer Huie believed Officer Greer was authorized to practice law. To find that the communication between Officers Huie and Greer is covered by the lawyer-client privilege, the court would have to distort the common law definition of "lawyer" to encompass a police officer acting as a union representative. Because evidentiary privileges must be "strictly construed," *Trammel,* 445 U.S. at 50, 100 S.Ct. at 912, the court is not prepared to do so.

█ It is undisputed that the Memorandum of Understanding between the Association and its members requires the communication between Officers Huie and Greer to be confidential, the agreement is *only* between the Association, its members, the Police Department, and Salt Lake City. Mr. and Mrs. Walker, for example, were not parties to the agreement. The scope of federal common law cannot be dictated by agreement among private parties, particularly where the rights of other parties are

involved. The court, finds no reason to expand the attorney-client privilege to include the relationship between the two police officers in this case.

### B. *Executive Privilege*

 Officers Huie and Greer next argue that because their communications were made as a part of the City's internal investigatory and disciplinary procedures, the communications are covered by an official information or executive privilege. The communications were made between two individual officers. They were not communications made by the City or on behalf of the City. An official information privilege belongs to the government not to private individuals. *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989). The City has not joined Officers Huie and Greer in asserting the privilege in this instance.[1] Accordingly, these individual officers may not assert an official information privilege.

### C. *Right to Privacy*

Officers Greer and Huie assert that they have a fundamental right to keep their communications private. They assert that the right to privacy protects personal and sensitive information, and the communications between them is highly sensitive and privileged. Whatever the contours of the right of privacy, it is clear that it protects at most "only highly personal information." *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir.1989). Officers Huie and Greer have failed to carry their burden of proving that the communications between them meet this standard. Furthermore the officers' privacy rights are not implicated when the disclosures are related to their work as police officers. The Tenth Circuit has held that privacy rights were not violated when revelations concerned an investigation of the use of

contraband drugs by fire fighters. *Mangels v. Pena*, 789 F.2d 836 (10th Cir.1986). Accordingly, the officers' assertion of a right to privacy does not justify issuing a protective order.

### CONCLUSION

Officers Huie and Greer have not asserted a sufficient reason for the court to issue a protective order barring the deposition of Officer Greer. The Motion for Protective Order is DENIED. The parties are directed to continue with discovery.

IT IS HEREBY ORDERED.

---

1. The City previously asserted a privilege with respect to the internal affairs documents relating to this incident and other incidents involving Officer Huie. The court found that the plaintiffs' need to have access to the documents relating to this incident outweighed the conditional privilege of official confidence. Furthermore, those documents were relevant to the dispute and reasonably calculated to lead to the discovery of admissible evidence. With respect to internal affairs documents not pertaining to this case, the court found that they were not reasonably calculated to lead to the discovery of admissible evidence, and that there appeared to be a sufficient factual basis for the results reached in those investigations.