**In re MOTORSPORTS MERCHANDISE ANTITRUST LITIGATION.**

**Civ.A. No. 1:98–MC–0044–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

March 31, 1999.

Mark L. Esposito, PennStuart, Bristol, VA, John Hinton, IV, Chitwood & Harley, Atlanta, GA, Ronald Lee Livingston, Tremblay & Smith, Charlottesville, VA, for plaintiffs.

## *MEMORANDUM OPINION*

SARGENT, United States Magistrate Judge.

### *I. Background and Facts*

This matter is before this court on cross motions filed by plaintiffs' counsel and counsel for a nonparty corporation on which plaintiffs' counsel has issued a subpoena duces tecum compelling the production of certain documents. The plaintiffs in this case are automobile racing fans who have sued various vendors of racing souvenirs and others in the United States District Court for the Northern District of Georgia, Atlanta Division, seeking damages based on an alleged conspiracy to fix the prices of racing souvenirs sold at National Association for Stock Car Auto Racing, ("NASCAR"), Winston Cup[1] races in violation of § 1 of the Sherman Act, 15 U.S.C.A. § 1 (1997). Plaintiffs' have brought this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons in the United States who purchased souvenirs or other merchandise from licensed vendors at any NASCAR Winston Cup race between January 1, 1991, and the present. (Complaint at ¶ 41.) According to the representations of counsel, the Georgia court is currently considering whether to certify the case as a class action, but it has not yet issued its ruling on the issue.

This matter is before this court on Plaintiff's Motion to Compel Production Of Documents From Buck Fever Racing, Inc., filed on December 21, 1998, ("Motion to Compel"), seeking to compel Buck Fever Racing, Inc., ("Buck Fever"), to produce certain documents requested pursuant to a subpoena duces tecum plaintiffs counsel issued to Buck Fever. Buck Fever is a retailer of Winston Cup racing souvenirs, which it sells at locations other than Winston Cup races. This matter also is before the court on Buck Fever's Motion To Quash Subpoena filed December 30, 1998, ("Motion to Quash"). The matter is before the undersigned pursuant to an Order entered January 11, 1999, referring all discovery matters in this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). A hearing was held on this matter on March 11, 1999.

The parties to this discovery dispute have filed legal memoranda in support of their positions, as well as supporting exhibits and affidavits, for the court's consideration. From these documents and the arguments of counsel at the hearing, the court has been able to glean the following undisputed facts. Plaintiffs' counsel issued a subpoena duces tecum to Buck Fever on September 14, 1998, seeking production of certain documents from Buck Fever by 10 a.m. on September 30, 1998. The subpoena sought the following documents:

1. Documents sufficient to show the categories (i.e., hats, t-shirts, etc.) of merchandise that you sell.

2. Documents sufficient to identify each product that you sell and your suppliers of each such product.

3. Documents sufficient to show the price for each product that you sell. If a product's price has changed during the relevant period, produce documents sufficient to show each product's price at all times during the relevant period.

4. Documents sufficient to show the costs of goods sold for each product that you

---

1. The NASCAR Winston Cup is an annual series of more than 30 stock car races involving the world's leading stock car drivers. According to the Complaint filed in this case, approximately 5.6 million people attended a NASCAR Winston Cup race in 1996. (Complaint at ¶ 54.) The races are held at various premier speedways located across the country.

sell. If such costs of goods sold have changed during the relevant period, produce documents sufficient to show the costs of goods sold at all times during the relevant period.

5. All internal and public monthly, quarterly, and annual financial statements, including profit and loss statements and balance sheets, during the period January 1, 1991 to present.

6. All catalogs, advertisements, or other sales materials for the products you sell.

7. Documents that evidence any agreements or communications between you and any other person or entity regarding the prices that you charge for your products.

8. Documents sufficient to show any royalties or license fees that you pay for the products that you sell.

9. Documents sufficient to identify your customers.

The instructions listed on the attachment to the subpoena defined the "relevant period" as January 1, 1991, to the present.

On September 25, 1998, Linda Poole, a private process server, delivered the subpoena to Buck Fever employee Vickie Blevins at Buck Fever's retail sales store on Lee Highway in Marion, Virginia. Blevins worked as a part-time retail sales clerk at the store. Blevins was not then, nor has she ever been an officer, stockholder, director, managing agent, supervisor, manager or registered agent of Buck Fever. Blevins has never been authorized to accept service of process on behalf of Buck Fever. Blevins' and Poole's accounts of their conversation and actions on this date differ, but based on my ruling below, these different versions are not significant and will not be set forth here.

On September 28, 1998, plaintiffs' counsel, John Hinton, IV, received a message from Donna Benny, an employee of Buck Fever, seeking to negotiate an extension of time for Buck Fever to comply with the subpoena. Hinton and Benny later agreed that Buck Fever could have an extension until October 30, 1998, to produce the requested documents. Around October 30, Hinton spoke with another Buck Fever employee, Denise Fuller, and agreed to allow Buck Fever an additional two or three weeks to comply with the subpoena. On November 24, 1998, Hinton called Fuller to set a final date for production of the requested documents, and Fuller directed Hinton to contact Mark Esposito, Buck Fever's counsel. Hinton contacted Esposito, and Esposito told him that he represented Buck Fever with regard to plaintiffs' subpoena. Esposito told Hinton that he had just recently received a copy of the subpoena from Buck Fever. Esposito informed Hinton that Buck Fever might not comply with the subpoena, and he requested that Hinton provide him with proof of valid service on his client. Esposito stated that he was meeting with representatives of Buck Fever later that week and would call Hinton the following Monday to clarify Buck Fever's position. Esposito later left Hinton a voice mail message that his meeting with the Buck Fever representatives had been rescheduled for December 10, 1998, and he stated that he would call Hinton after that meeting. When Hinton did not hear anything further from Esposito, he tried to contact Esposito by telephone and wrote two letters with no response.

On December 21, 1998, plaintiffs' counsel filed the Motion to Compel requesting that this court order Buck Fever to comply with the subpoena and produce the requested documents within 10 days. In the accompanying legal memorandum in support of their motion, plaintiffs state that Buck Fever is one of several "benchmark" firms which plaintiffs served with subpoenas duces tecum. Plaintiffs assert that the information requested from these benchmark firms is required to allow its expert witnesses to ascertain whether the defendants' alleged conspiracy impacted the plaintiffs by raising the price of NASCAR Winston Cup souvenirs sold at races. Plaintiffs also assert that this information is necessary to enable their experts to quantify the plaintiffs' damages. Plaintiffs further assert that Buck Fever has waived any objection it might have had to the subpoena because it did not file written objections within 14 days of service as required by Rule

45(c)(2)(B) of the Federal Rules of Civil Procedure.

On December 30, 1998, Buck Fever filed its Motion to Quash and accompanying memorandum asserting that the court should quash the subpoena because it had never been properly served on Buck Fever. The Motion to Quash and accompanying memorandum raised no other objection to the subpoena, other than asserting that service on Blevins did not constitute proper service on Buck Fever under Rules 45(b) and 4 of the Federal Rules of Civil Procedure. On March 9, 1999, Buck Fever filed its Response And Objection Of Buck Fever Racing, Inc. To Plaintiff's Motion To Compel Production Of Documents And Memorandum In Support Thereof, ("Response And Objection"). In this document, Buck Fever argues that the court should deny the plaintiffs' Motion to Compel because the subpoena is overbroad on its face, burdensome and seeks confidential, highly sensitive, proprietary information. Buck Fever also asserts that the court should quash the subpoena because discovery at this point of the litigation should be limited to issues relevant to certification of the plaintiffs' class. Buck Fever further asserts that it would sustain excessive expense should it be forced to identify and produce the requested documents. At the March 11 hearing, plaintiffs' counsel informed the court that Buck Fever was one of approximately 20 businesses which had been served with similar subpoenas in an effort to collect information to be used by plaintiffs' experts. Plaintiffs' counsel also assert that Buck Fever was one of only a few such businesses still in operation that had sold Winston Cup merchandise since 1991. Plaintiffs' counsel agreed that plaintiffs should bear any reasonable expense incurred by Buck Fever in complying with the subpoena.

## II. Analysis

A. Service of Subpoena on Nonparty Corporation

 Rule 45(b) of the Federal Rules of Civil Procedure is silent with regard to what constitutes proper service of a subpoena upon a corporation. Consequently, the courts have looked to Rule 4 for guidance.

*See Vaughan Furniture Co., Inc. v. Featureline Mfg., Inc.,* 156 F.R.D. 123, 126 (M.D.N.C.1994); *In re Electric & Musical Indus., Ltd., Middlesex, England,* 155 F.Supp. 892, 893 (S.D.N.Y.1957). *Also* 9A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2ND § 2454 p. 24–25 (West 1995). Rule 4(h) addresses service upon a corporation and states:

> Unless otherwise provided by federal law, service upon a domestic or foreign corporation ... shall be effected:
>
> (1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant....

FED.R.CIV.P. 4(h). Subsection 4(e)(1) states:

> Unless otherwise provided by federal law, service upon an individual ... may be effected in any judicial district of the United States:
>
> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State....

FED.R.CIV.P. 4(e)(1). Therefore, under the Federal Rules of Civil Procedure, a party properly may serve a subpoena upon a corporation by personal service upon an officer or agent or pursuant to the law of the state in which the district court is located.

 In Virginia, service may be effected upon a corporation by personal service upon any officer, director, registered agent or a person properly designated by the registered agent to accept service. VA.CODE ANN. §§ 8.01–299 (Michie 1992 Repl.Vol.) and 13.1–637 (Michie 1998 Supp.). Virginia law also provides, however, that service is effective if it reaches the person to whom it is

directed within the time prescribed by law, if any, although process was not formally served or accepted. VA.CODE ANN. § 8.01–288 (Michie 1992 Repl.Vol.). Thus, under § 8.01–288, service is effective as of the date that a legal document has come to a person or entity regardless of how the document has come to the person or the entity. *Pennington v. McDonnell Douglas Corp., et al.*, 576 F.Supp. 868, 872 (E.D.Va.1983). *See also Allied Towing Corp. v. Great Eastern Petroleum Corp.*, 642 F.Supp. 1339, 1353 (E.D.Va. 1986) and *Karara v. County of Tazewell*, 450 F.Supp. 169, 170 n. 1 (W.D.Va.1978).

In this case, the facts surrounding the delivery of the subpoena to Blevins on September 25, 1998, are in dispute. Nonetheless, it is clear that by November 24, 1998, the subpoena had come to the attention of the appropriate corporate representatives, who had reviewed the subpoena and had retained counsel to represent the corporation with regard to the document production. Based on my review of the law and these facts, Buck Fever's argument that the court should quash the subpoena because it was never properly served must fail.

## B. Waiver of Objections to Subpoena

 Having found that the subpoena came to the attention of the proper corporate representatives by November 24, 1998, I must next determine whether Buck Fever waived any objection it might have had to the subpoena, other than its objection to the method of service, by failing to file written objections to the subpoena prior to March 9, 1999. Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure states:

> Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.

FED.R.CIV.P. 45(c)(2)(B). Ordinarily, the failure to make timely objection to a subpoena duces tecum pursuant to this rule will waive any objection. *Concord Boat Corp., et al., v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y.1996); *Semtek International, Inc. v. Merkuriy Ltd.*, 1996 WL 238538 at 2 (N.D.N.Y.1996) citing *Deal v. Lutheran Hospitals & Homes*, 127 F.R.D. 166, 167–68 (D.Alaska 1989). *See also Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir.1990); *Creative Gifts, Inc., v. UFO*, 183 F.R.D. 568, 570 (D.N.M. 1998); *Wright v. Montgomery County*, 1999 WL 80275 at 3–4 (E.D.Pa. Feb. 3, 1999); *Alexander v. FBI*, 1998 WL 292083 at 6 (D.D.C. May 28, 1998). In unusual circumstances and for good cause, however, the failure to act timely will not bar consideration of objections. *Semtek International*, 1996 WL 238538 at 2 citing *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D.Mass.1988) and *Celanese Corp. v. E.I. duPont de Nemours & Co.*, 58 F.R.D. 606, 609–610 (D.Del.1973). Such unusual circumstances and good cause may be shown by a subpoena that is overbroad on its face, *Krewson*, 120 F.R.D. at 7, a subpoena that would impose significant expense on a nonparty acting in good faith, *Semtek International*, 1996 WL 238538 at 2, or contact between counsel for the subpoenaed party and the subpoenaing party prior to the challenge to the subpoena, *Concord Boat Corp.*, 169 F.R.D. at 48.

The subpoena duces tecum at issue in this case is broad on its face. In fact, plaintiffs' counsel admits that the plaintiffs are seeking basically all of Buck Fever's financial records since 1991, including detailed documentation of Buck Fever's inventory and sales. Also, Buck Fever has represented to the court that compliance with the subpoena would cause the corporation a great effort of time and expense.

Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure allows the court by which a subpoena is issued to quash or modify a subpoena if it:

1. fails to allow reasonable time for compliance;

2. requires a nonparty witness to travel more than 100 miles;

3. requires disclosure of privileged or other protected matter; and

4. subjects a person to undue burden.

FED.R.CIV.P. 45(c)(3)(A). The Rule also states, however, that the court shall quash or modify the subpoena, "[o]n timely motion." FED.R.CIV.P. 45(c)(3)(A). In this case, Buck Fever did not file its Motion to Quash until December 30, 1998, 36 days after the date upon which the court has found that the proper corporate representatives were aware of the subpoena. Furthermore, the Motion to Quash raised an objection to the subpoena only on the ground that it was not properly served. Buck Fever did not provide any other written objection to the subpoena until March 9, 1999, when it filed its Response And Objection. Buck Fever has offered no explanation as to why it waited more than three months after its corporate officers were aware of the subpoena and had retained counsel to file any substantive objections to the subpoena. Even more troubling are the plaintiffs' undisputed assertions that representatives of Buck Fever had assured plaintiffs' counsel from September 28, 1998, to November 24, 1998, that it intended to comply with the subpoena and simply needed more time to produce the documents requested.

In light of these facts, I can find little justification for quashing the subpoena in its entirety. Also, I note that the plaintiffs have provided the court with information sufficient to show a substantial need for it to obtain the requested documents from Buck Fever because Buck Fever is apparently one of only a few businesses still in operation which has sold Winston Cup merchandise continuously since 1991. Nonetheless, based on Buck Fever's representation that compliance with the subpoena will cause it great hardship, I find that Buck Fever should not be forced to produce the documents requested by this subpoena until 14 days after the Georgia court has ruled that it will allow this case to proceed as a class action or 14 days after issuance of the order accompanying this Memorandum Opinion, whichever is the later date. Furthermore, I will order that plaintiffs must compensate Buck Fever for all reasonable costs incurred in the production of the requested documents.

Regarding Buck Fever's argument that the subpoena compels production of sensitive, confidential financial information, I find that the Protective Order Regarding Use Or Disclosure Of Confidential Information entered by the Georgia court on April 7, 1998, adequately addresses these concerns, and I will order that the parties to this discovery dispute comply with this protective order.

Based on the above stated reasons, I will grant the plaintiffs' Motion to Compel, deny Buck Fever's Motion to Quash and order Buck Fever to respond to the subpoena.