Kevin McCOY, et al.,

v.

SOUTHWEST AIRLINES COMPANY, INC., et al.,

John Bologa,

v.

Southwest Airlines Company, Inc., et al.;

Linda McDonnell, et al.,

v.

Southwest Airlines Company, Inc., et al.;

Thomas Hayes, et al.,

v.

Southwest Airlines Company, Inc., et al.;

Ryan Lampkin, et al.,

v.

Southwest Airlines Company, Inc., et al.;

John D. Barrett, et al.,

v.

Southwest Airlines Company, Inc., et al.;

Joseph Ferezy, et al.,

v.

Southwest Airlines Company, Inc., et al.;

Janet Chomo, et al.

v.

Southwest Airlines Company, Inc., et al.;

Baydsar Thomasian,

v.

Southwest Airlines Company, Inc., et al.;

Vahak Thomasian,

v.

Southwest Airlines Company, Inc., et al.;

Armen Keshishian, et al.,

v.

Southwest Airlines Company, Inc., et al.

No. CV 01–4426–RSWL(RCx), CV 01–1933–RSWL(RCx), CV 01–3156–RSWL(RCx), CV 00–7666–RSWL(RCx), CV 01–1934–RSWL(RCx), CV 01–3157–RSWL(RCx), CV 00–9982–RSWL(RCX), CV 01–3155–RSWL(RCx), CV 01–4820–RSWL(RCx), CV 01–4822–RSWL(RCx), CV 01–4824–RSWL(RCx).

United States District Court,
C.D. California.

Nov. 7, 2002.

J. Clark Aristei of Baum, Hedlund, Aristei, Guilford & Schiavo, Gretchen M. Nelson of the Law Offices of Gretchen M. Nelson, Los Angeles, CA, Delores A. Yarnall and James R. Kristy of Binder & Associates, Pasadena, and Ronald L.M. Goldman of The Law Offices of Ronald L.M. Goldman, Marina del Rey, CA, for plaintiffs.

Christopher M. Young of Gray Cary Ware & Freidenrich, San Diego, CA, Arthur I. Willner of Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Marina del Rey, CA, for Southwest Airlines Co., and Peterson and Erwin.

## PROCEEDINGS: PLAINTIFFS' MOTION TO COMPEL DOCUMENTS PURSUANT TO A SUBPOENA SERVED ON SWAPA

CHAPMAN, United States Magistrate Judge.

On September 9, 2002, plaintiffs filed a notice of motion and joint stipulation to compel documents pursuant to a subpoena served on SWAPA (Southwest Airlines Pilots Association), the supporting declaration of J. Clark Aristei and exhibits, and the opposing declarations of Howard B. Peterson, Jeffrey D. Erwin, Arthur I. Willner and exhibits, and Robert W. Conti. On October 10, 2002, this Court set a briefing schedule for the parties to file new memoranda, and continued the hearing on the pending motion to November 7, 2002. On October 22, 2002, the parties filed a notice of continuance of hearing re joint stipulation on plaintiffs' motion to compel documents pursuant to a subpoena served on SWAPA. On October 24, 2002, defendants Peterson and Erwin filed a supplemental brief with notice of lodging supporting out-of-state case, and on October 25, 2002, plaintiffs filed a supplemental memorandum of points and authorities.

Oral argument was held before Magistrate Judge Rosalyn M. Chapman on November 7, 2002. Plaintiffs were represented by J. Clark Aristei, Delores A. Yarnall, Ronald M. Goldman, Gretchen Nelson, and James R. Kristy, attorneys-at-law. Defendants Peterson and Erwin were represented by Arthur I. Willner, attorney-at-law, and defendant Southwest Airlines, Inc., was represented by Christopher M. Young, attorney-at-law.

## BACKGROUND

### I

On April 8, 2002, plaintiffs served a Rule 45 subpoena duces tecum on the custodian of records for SWAPA, requesting, *inter alia*, no later than April 19, 2002, all documents pertaining to the employment relationships between Southwest Airlines and defendants Peterson and Erwin from March 5, 2000, to the present. Aristei Decl., ¶ 2, Exh. 1. On April 11, 2002, defendants Peterson and Erwin objected to the foregoing document requests on the grounds of attorney-client privilege, failure to give proper notice, and right to privacy under Article 1, Section 1 of the California Constitution. Aristei Decl., ¶ 3, Exh. 2. However, defendants Peterson and Erwin did not file a motion for a protective order or to quash the subpoena. Further, SWAPA did not make any objections to the subpoena; nonetheless, on April 12, 2002, SWAPA advised plaintiffs that "it is in the interest of SWAPA to await a resolution of the objections [of defendants Peterson and Erwin]." Aristei Decl., ¶ 5, Exh. 4.

On May 24, 2002, defendants Peterson and Erwin provided plaintiff with a privilege log identifying 16 specific SWAPA documents being withheld from production based on attorney-client privilege or the work-product doctrine. Aristei Decl., ¶ 12, Exh. 11; Willner Decl., ¶ 5.[1] On June 25, 2002, SWAPA provided plaintiffs with a privilege log setting forth several documents being withheld on attorney-client privilege and work-product doctrine grounds. Aristei Decl., ¶ 14, Exhs. 13, 15. However, on July 29, 2002, defendants Peterson and Erwin advised plaintiffs

---

1. On April 24, 2002, defendant Peterson's and Erwin's counsel initially reviewed SWAPA's documents in Dallas, Texas. Willner Decl., ¶ 3; Conti Decl., ¶ 2. On May 6, 2002, defendants Peterson and Erwin advised plaintiffs that a privilege log was being prepared. Willner Decl., ¶ 4. It took counsel for defendants Peterson and Erwin approximately four weeks from the initial review to prepare the privilege log and to provide it to plaintiffs. *Id.*

they were withdrawing their work-product doctrine objections to 14 of the documents on the privilege log, they continued to object on attorney-client privilege grounds to documents 3 and 4 on their privilege log, and SWAPA's privilege log was not authorized by them. Aristei Decl., ¶ 17, Exh. 16; Willner Decl., ¶ 10.

## II

The declarations of Messrs. Peterson and Erwin establish that during the summer of 2000, after their employment was terminated by defendant Southwest Airlines, they were preparing with representatives of SWAPA for their grievance hearing before the System Board. Peterson Decl., ¶ 2; Erwin Decl., ¶ 2. Both defendants were advised that they were "not permitted to have an attorney present[; rather i]t was [their] understanding that SWAPA would act as [their] attorney while preparing for and participating in the System Board proceeding." *Ibid.* To prepare for the System Board hearing, defendants Peterson and Erwin separately met with SWAPA Grievance Committee representatives Len Legge and Monte Sparks. Peterson Decl., ¶ 3; Erwin Decl., ¶ 3. "Mr. Sparks served as [the] advocate at [defendant Peterson's and Erwin's] hearing[s] before the System Board." *Ibid.*

The disputed documents are transcripts of the separate interviews between defendants Peterson and Erwin and their SWAPA representatives Legge and Sparks.[2] Each defendant explains that the purpose of his interview with Messrs. Legge and Sparks "was to candidly discuss issues relating to the landing of flight 1455, as well as issues pertaining to the positions Southwest Airlines might take at the System Board hearing and questions that might be posed to the various witnesses that were expected to testify." Peterson Decl., ¶ 4; Erwin Decl., ¶ 4. Finally, each defendant states he intended

and understood his communications with SWAPA personnel "would be confidential," and he has not authorized the release of the transcripts of his interview to anyone other than his counsel before the "F.A.A.'s enforcement proceeding" and his counsel in this matter. Peterson Decl., ¶ 5; Erwin Decl., ¶ 5.

## DISCUSSION

### III

Federal Rule of Civil Procedure 45 governs subpoenas duces tecum for the production of documents with or without the taking of a deposition.[3] One of the purposes of Rule 45 is "to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties...." Advisory Committee Notes to 1991 Amendment. "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." *Id.*

■ Under Rule 45, the nonparty served with the subpoena duces tecum may make objections to the subpoena duces tecum within 14 days after service or before the time for compliance, if less than 14 days. Fed. R.Civ.P. 45(c)(2)(B). "Only the [nonparty] can prevent disclosure by objection. The party to whom the subpoenaed records pertain *cannot* simply object. Rather, a protective order or motion to quash the subpoena is required." Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial,* ¶ 11:422 (2002 rev.) (emphasis in original); *see also Pennwalt Corp. v. Durand–Wayland, Inc.,* 708 F.2d 492, 494 n. 5 (9th Cir.1983) ("Once the person subpoenaed objects to the subpoena ... the provisions of Rule 45(d) come into

---

2. Neither defendant explains the purpose of having Mr. Legge present during his interview or why his presence does not adversely affect their claim of attorney-client privilege. Similarly, it is undisputed that the transcripts of defendants Peterson's and Erwin's interviews with their SWAPA representatives were in the possession of SWAPA's attorney, Stanley Lubin; yet, defen-

dants do not claim that an attorney-client relationship existed between them and Mr. Lubin.

3. Rule 34, pertaining to the production of documents, provides that "[a] person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." Fed.R.Civ.P. 34(c).

play. Then the party seeking discovery must obtain a court order directing compliance."). Failure to serve timely objections waives all grounds for objection, including privilege, as the Second Circuit has held:

> Rule 45(c)(2)(B)[ ] require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a "game." We ... believe that [Rule 45](d)(2) contains additional requirements for a claim of privilege not alternative ones. While we are mindful that "the investment of time necessary to review all responsive documents for privileged material ... does not lend itself to the limited fourteen (14) day time period ...," a person responding to a subpoena should at least assert any privileges within the 14 days provided in Rule 45(c)(2)(B). A full privilege log may follow "within a reasonable time," or if more time is needed an extension may be sought from the trial court.

*In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998) (citations omitted). Thus, a nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objection, including attorney-client privilege, has been waived. *Id.; Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D.N.M.1998); Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, ¶ 11:424 (2002 rev.).

■ Here, it is undisputed that nonparty SWAPA failed to make timely objections to the Rule 45 subpoena duces tecum. Nonetheless, " '[i]n unusual circumstances and for good cause, ... the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena].' " *American Electric Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D.Oh.1999) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y.1996)); *In re Motorsports Merchandise Antitrust Litigation*, 186 F.R.D. 344, 349 (W.D.Va.1999); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 21, 34 (D.D.C.1998). "Courts have found unusual circumstances where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena." *American Electric Power Co.*, 191 F.R.D. at 136–37; *Alexander*, 186 F.R.D. at 34; *Concord Boat Corp.*, 169 F.R.D. at 48. Here, the Court does not find good cause since the subpoena is not overbroad and the foregoing factors are generally not applicable. To the contrary, the two categories of the subpoena at issue are narrowly drawn, seeking relevant information "within the bounds of fair discovery."

■ Defendants Peterson and Erwin also argue it would be unduly harsh for the Court to find, in the circumstances of this action, that SWAPA's failure to make objections to the subpoena duces tecum waives their claim of the attorney-client privilege. Instead, defendants Peterson and Erwin argue this Court should either treat their timely objections as a motion for a protective order or, alternatively, consider SWAPA's April 12, 2002 letter to plaintiffs' counsel, which was also within the time for making objections, as SWAPA's objections. Although the Court does not find these arguments to be persuasive, it does note that, under Rule 26(c), the Court may sua sponte grant a protective order for good cause shown. *See Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 558 n. 4 (D.N.J.1994) ("[U]nder Fed.R.Civ.P. 26(c), and the discretion allocated this court in the management of discovery generally, where a court determined to deny a motion to compel, it may, if circumstances so justify, enter a protective order *sua sponte.* The converse is likewise a possibility."). Thus, the Court will address the merits of defendants Peterson's and Erwin's claim of attorney-client privilege.

## IV

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order. A protective order should be granted when the moving party establishes "good cause" for the order and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense...." Fed.R.Civ.P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir.2002); *Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.), *cert. denied*, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Industries*, 966 F.2d at 476 (internal quotations marks omitted).

In a federal action based on diversity jurisdiction, state law governs privilege claims. Fed.R.Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir.1993); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D.Cal.1998). Under California law, the attorney-client privilege attaches to confidential communications between a client and his attorney during the course of the attorney-client relationship. Cal. Evid.Code § 952; *Roberts v. City of Palmdale*, 5 Cal.4th 363, 371, 20 Cal.Rptr.2d 330, 333–34, 853 P.2d 496 (1993); *Southern California Gas Co. v. Public Utilities Comm'n*, 50 Cal.3d 31, 37, 265 Cal.Rptr. 801, 803, 784 P.2d 1373 (1990). The party asserting the privilege bears the initial burden of demonstrating that the communication falls within the privilege. *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 123, 68 Cal. Rptr.2d 844 (1997); *State Farm Fire & Casualty Co. v. Superior Court*, 54 Cal.App.4th 625, 639, 62 Cal.Rptr.2d 834 (1997).

Defendants Peterson and Erwin argue their discussions with SWAPA or union representatives in preparation for their grievance hearings before Southwest's System Board of Adjustment, a proceeding mandated by the Railway Labor Act, 45 U.S.C. §§ 151, et seq., are privileged. Specifically, defendants Peterson and Erwin argue the transcripts of their discussions or interviews "are entitled to the same protection of confidentiality" that the California Supreme Court found so compelling in *Welfare Rights Orga-*

*nization v. Crisan*, 33 Cal.3d 766, 190 Cal. Rptr. 919, 661 P.2d 1073 (1983). Joint Stip. at 5:10–6–19, 21:23–27:2. There is no merit to this argument.

In *Welfare Rights Organization*, the California Supreme Court held that "communications between welfare claimants and lay representatives authorized to represent them in administrative fair hearings under the aid to families with dependent children (AFDC) program are privileged." *Id.* at 768, 190 Cal.Rptr. at 920, 661 P.2d 1073. The California Supreme Court's decision was based on several interrelated considerations. First, the California Supreme Court held that, under California law, "unless a privilege is expressly or impliedly based on statute, its existence may be found only if required by constitutional principles, state or federal." *Id.* at 769, 190 Cal.Rptr. at 921, 661 P.2d 1073. Second, the California Supreme Court noted that "AFDC is a federal program ... [with] detailed requirements [for state participation, including] that the [state] plan provide for a system of hearings which meets ... due process standards..." and, "[t]he conclusion we reach on the privilege question ... derives from the nature of those hearings as authoritatively prescribed." *Id.* at 769, 190 Cal.Rptr. at 921, 661 P.2d 1073 (citations omitted). Third, the California Supreme Court stated that "AFDC recipients have a federal due process right to an evidentiary hearing before their benefits are terminated[,]" and this hearing "must provide a meaningful opportunity to be heard[,]" including a right to retain counsel if the recipient so desires, though the recipient need not be furnished with counsel. *Id.* at 769, 190 Cal.Rptr. at 921, 661 P.2d 1073 (citing *Goldberg v. Kelly*, 397 U.S. 254, 268–69, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970)). Fourth, the California Supreme Court found that "[c]onsistent with *Goldberg* and federal regulations, [California Welfare & Institutions Code § 10950] provide[s] for [an AFDC] hearing with representation by counsel or by a lay person[,]" making "it clear that claimants have a right to be represented by lay representatives as well as by members of the bar." *Id.* at 770, 190 Cal. Rptr. at 922, 661 P.2d 1073. Fifth, the Cali-

fornia Supreme Court held that "the Legislature must have implied [the attorney-client privilege's] existence as an integral part of the right to representation by lay persons. Otherwise, that right would, in truth, be a trap by inducing confidential communications and then allowing them to be used against the claimant. We do not attribute such a sadistic intent to the Legislature." *Id.* at 771, 190 Cal.Rptr. at 922–23, 661 P.2d 1073 (footnote omitted). Based on these considerations, the California Supreme Court held that "a privilege comparable to the attorney-client is impliedly provided by [California Welfare & Institutions Code § 10950]." *Id.* at 769–72, 190 Cal.Rptr. at 921–23, 661 P.2d 1073.

However, the California Supreme Court's Welfare Rights Organization opinion is distinguishable from the present situation. Here, defendants Peterson's and Erwin's hearings were held under the Railway Labor Act,[4] which requires air carriers to establish system boards of adjustment with jurisdiction over disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 184. These system boards " 'are the mandatory, exclusive, and comprehensive system for resolving grievance disputes.' " *Kozy v. Wings West Airlines, Inc.,* 89 F.3d 635, 639 (9th Cir.1996) (quoting *Long v. Flying Tiger Line, Inc.,* 994 F.2d 692, 693–94 (9th Cir. 1993)). Unlike the welfare claimants in Welfare Rights Organization, defendants Peterson and Erwin have not identified, nor has this Court found, any statute specifically authorizing representation by lay persons at a system board proceeding.[5] Absent such statutory authority,[6] defendant Peterson's and Erwin's communications to SWAPA's representatives are not privileged under California law. Indeed, the California Court of Appeal recognized as much in a case involving an asserted claim of attorney-client privilege for a "jailhouse lawyer":

> The fundamental distinction between the facts before the court in *Welfare Rights Organization v. Crisan,* ... and the instant case is the statute expressly authorizing lay representatives to represent the welfare claimants at the administrative hearings. This inducement to use lay representation (and thereby lay the foundation for a "trap") is absent here. While use of "jailhouse lawyers" is not prohibited, it is not encouraged or promoted by state action; nor are such communications privileged.

*People v. Velasquez,* 192 Cal.App.3d 319, 328–29, 237 Cal.Rptr. 366 (1987). Similarly, other courts have declined to either extend the attorney-client privilege or create a new privilege of confidentiality in analogous situations. *See, e.g., In re Grand Jury Subpoenas Dated January 20, 1998,* 995 F.Supp. 332, 334–37 (E.D.N.Y.1998) (holding "the court declines to recognize a common law privilege shielding conversations between union officials and members on matters of union concern"); *Walker v. Huie,* 142 F.R.D. 497, 499–502 (D.Ut.1992) (declining to create new privilege or extend attorney-client privilege to protect conversations between police

---

**4.** "The Railway Labor Act was enacted to avoid any interruption to commerce or to the operation of any carrier engaged therein and to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Association of Flight Attendants, AFL–CIO v. USAir, Inc.,* 960 F.2d 345, 347 (3d Cir.1992); 45 U.S.C. § 151a. "In 1936, Congress extended the Railway Labor Act to cover the then small-but-growing air transportation industry. Its general aim was to extend to air carriers and their employees the same benefits and obligations available and applicable in the railroad industry." *International Ass'n of Machinists, AFL–CIO v. Central Airlines, Inc.,* 372 U.S. 682, 685, 83 S.Ct. 956, 958, 10 L.Ed.2d 67 (1963); 45 U.S.C. § 181.

**5.** Although 45 U.S.C. § 153(j) provides that parties before a System Adjustment Board "may be heard either in person, by counsel, or by other representatives, as they may respectively elect," this provision is inapplicable to air carriers. 45 U.S.C. §§ 181–182.

**6.** Rather, the parties to proceedings before a system board establish the procedures for those proceedings, provided the procedures are constitutional and comport with the requirements and purposes of the Railway Labor Act. 45 U.S.C. § 184; *International Ass'n of Machinists,* 372 U.S. at 686–95, 83 S.Ct. at 959–64.

officer and union representative at disciplinary hearing, and noting "[t]he scope of federal common law cannot be dictated by agreement among private parties [to keep communications confidential], particularly where the rights of other parties are involved"); *Nemecek v. Board of Governors of the University of North Carolina*, 2000 WL 33672978, *3 (E.D.N.C.) ("While an extension of the attorney-client privilege to laypersons might be found to exist where the state specifically authorizes lay-person representation and where the particular administrative procedure must be exhausted in order to file the claim in court, that is not the case here. Therefore, the Court declines Plaintiff's request to extend the attorney-client privilege...."); *Hunt v. Maricopa Employees Merit System Comm'n*, 127 Ariz. 259, 264, 619 P.2d 1036 (1980) (Arizona Supreme Court concluded it would allow union representative to represent clerk in disciplinary hearing before county board of supervisors, but held "[t]he lay representative is not an attorney ... so there is no statutory privilege to protect the confidentiality of communications between an employee and his lay representative.").[7] For these reasons, defendants Peterson and Erwin have not met their burden of demonstrating the privileged nature of the documents they seek to withhold, and the Court determines that there is no merit to their claim of attorney-client privilege. Thus, plaintiffs' motion to compel should be granted.

## ORDER

Plaintiffs' motion to compel documents nos. 3 and 4 from nonparty SWAPA is granted, and those documents shall be produced to plaintiffs no later than seven (7) days from the date of this Order.

---

7. SWAPA's counsel, Stanley Lubin, represented petitioner in this action.