**Joon S. MOON, et al.,**

v.

**SCP POOL CORPORATION, et al.**

**No. CV 05–7729–NM(RCx).**

United States District Court,
C.D. California.

Dec. 7, 2005.

Michael S. Thomas, Kirk & Huth PC, Clinton Township, MI, for plaintiffs.

Tina Ivankovic Mangarpan, Ford, Walker, Haggerty & Behar, Long Beach, CA, for defendants.

**PROCEEDINGS: ORDER GRANTING DEFENDANTS' MOTION TO QUASH SUBPOENA TO KWANG SUNG AMERICA, INC.**

CHAPMAN, United States Magistrate Judge.

On October 28, 2005, defendants SCP Pool Corporation and South Central Pool Supply, Inc. (collectively "defendant") filed a motion to quash the subpoena issued by plaintiffs Joon S. Moon and Patterson Laboratories, Inc. ("plaintiffs") to nonparty Kwang Sung America, Inc., and a supporting memorandum of points and authorities, and on November 2, 2005, defendant filed a notice of errata re: Exhibit A. On November 23, 2005, plaintiffs filed their response to defendant's motion to quash, and on November 30, 2005, defendant filed its reply.

Oral argument was held before Magistrate Judge Rosalyn M. Chapman on December 7, 2005. Michael S. Thomas, attorney-at-law with the law firm Kirth & Huth, appeared on behalf of plaintiffs and Tina Ivankovic Mangarpan, attorney-at-law with the law firm Ford, Walker, Haggerty & Behar, appeared on behalf of defendant.

## BACKGROUND

### I

On January 6, 2005, plaintiffs filed an action in the Circuit Court for Wayne County, State of Michigan, setting forth six causes of action: (1) breach of contract re Moon; (2) breach of contract re Patterson Laboratories; (3) action for accounting; (4) promissory estoppel re Moon; (5) promissory estoppel re Patterson Laboratories; and (6) unjust enrichment or quantum meruit re Moon. In their complaint, plaintiffs allege that on January 8, 1999, Moon and defendant, the world's largest wholesale distributor of swimming pool supplies and related equipment, entered into an Import Broker Agreement making Moon defendant's "exclusive" broker of winter swimming pool covers within the "Far East Region" for a three year period, and requiring defendant to pay Moon a 5% commission on the net purchases of such covers; however, defendant has failed to account for and pay Moon his commissions. Complaint, ¶¶ 5, 10–16. Specifically, paragraph 1 of the Import Broker Agreement provides:

> The Company [defendant SCP Pool Corporation] grants the Import Broker [plaintiff Moon] the exclusive right to purchase winter covers within the Far East Region only, provided that the pricing, quantity, quality, and other terms of any purchase by the Import Broker must be approved by the Company in writing before such purchase is binding on the Company.

Motion to Quash, Exh. A. Plaintiffs further allege that at the same time it entered into the Import Broker Agreement with plaintiff Moon, defendant agreed to continue to purchase liquid swimming pool products from plaintiff Patterson Laboratories; however, defendant has failed and refused to do so, and instead purchases such products from other sources. Complaint, ¶¶ 17–20. Plaintiffs seek a declaration that defendant breached its agreements with Moon and Patterson Laboratories, awards of commissions and lost profits, an accounting, attorney's fees and other relief. Complaint at 10.

On January 24, 2005, defendant removed the complaint from the Michigan court to the United States District Court for the Eastern District of Michigan, where it is pending. *Moon, et al. v. SCP Pool Corp., et al.*, case no. CV 05–70228–DPH–DAS. On June 13, 2005, defendant filed its answer and several affirmative defenses to the complaint.[1]

## II

On or about October 13, 2005, plaintiffs served a subpoena under Fed.R.Civ.P. 45 on Kwang Sung America, Inc. ("KSA"),[2] a nonparty located in this district, seeking the production on October 28, 2005, of the following seven categories of documents:

(1) any and all agreements between KSA and defendant "relating to the purchase, sale and/or brokerage of pool winter covers";

(2) any and all documents relating to KSA's "sale of pool winter covers to [defendant] from 1995 through the present";

(3) any and all documents "relating to [KSA's] business relationship with [defendant]";

(4) any and all documents relating to KSA's "sale of pool winter covers 'to and/or through Cantar/Polyair Corporation or any of its affiliated entities from 1995 to the present'";

(5) any and all documents relating to "communications" between KSA and defendant having "as their subject matter, in whole or in part, the sale/purchase of pool winter covers or Joon Moon";

(6) any and all documents relating to "communications" between KSA and "Cantar/Polyair Corporation or any of its affiliated entities and hav[ing] as their subject matter ... the sale/purchase of pool winter covers or Joon Moon"; and

(7) any and all documents relating to "communications" between defendant "and Cantar/Polyair Corporation and hav[ing] as their subject matter ... the sale/purchase of pool winter covers or Joon Moon." Motion to Quash, Exh. F.

On October 26, 2005, defendant provided plaintiffs with objections to the subpoena served on KSA, generally objecting to all requests on relevancy grounds. Motion to Quash, Exh. G. In its motion to quash, defendant argues all document requests seek irrelevant information, citing paragraph 5 of the Import Broker Agreement for the proposition that defendant could purchase from KSA winter pool covers, regardless of their origin—even under the Import Broker Agreement with plaintiff Moon. Paragraph 5 of the Import Broker Agreement provides:

> The Company [defendant SCP Pool Corporation] shall have the right to purchase winter [pool] covers (imported or domestically produced) from any company that is based in the United States or Europe, such as but not limited to, Cookson/Pacific, Swimline, Cantar, Century Products.

Motion to Quash, Exh. A. Further, defendant argues request nos. 1–7 seek irrelevant information covering years the Import Broker Agreement with Moon was not in effect; request nos. 4, 6 and 7 seek irrelevant information relating to defendant's business relationship with Cantar/Polyair Corporation, and the Import Broker Agreement expressly exempts Cantar from its coverage; and request

---

1. The discovery cut-off date is March 6, 2006; the motion cut-off date is May 20, 2006; a pretrial conference is set for May 22, 2006; and a jury trial is scheduled to commence June 20, 2006.

2. Plaintiffs assert that KSA "provides sales and marketing directions, and coordinates shipping logistics throughout the U.S., Canada, and Mexico[,]" Response, Exhibit 3, on behalf of Kwang Sung Company, Ltd., a Korean manufacturer. *Id.*, Exhibit 4.

nos. 1–7 seek irrelevant information unrelated to the "Far East Region." Motion to Quash, Exh. G.

## DISCUSSION

Rule 26(b)(1) permits discovery in civil actions of "any matter, not privileged, that is relevant to the claim or defense of any party...." Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute. *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998). Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial. *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D.Kan.1993). All discovery, and federal litigation generally, is subject to Rule 1, which directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

Federal Rule of Civil Procedure 45 governs subpoenas duces tecum for the production of documents with or without the taking of a deposition.[3] One of the purposes of Rule 45 is "to facilitate access outside the deposition procedure provided by Rule 30 to documents and other information in the possession of persons who are not parties...." Advisory Committee Notes to 1991 Amendment. "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." *Id.*

■ Under Rule 45, the nonparty served with the subpoena duces tecum may make objections to the subpoena duces tecum within 14 days after service or before the time for compliance, if less than 14 days. Fed. R.Civ.P. 45(c)(2)(B). On timely motion, the court may quash or modify the subpoena. Rule 45(c)(3)(A). A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash. Schwarzer, Tashi-

ma & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, ¶ 11:2291 (2005 rev.) (emphasis in original); *see also Pennwalt Corp. v. Durand–Wayland, Inc.*, 708 F.2d 492, 494 n. 5 (9th Cir. 1983) ("Once the person subpoenaed objects to the subpoena ... the provisions of Rule 45[c] come into play.").

■ Here, defendant, rather than nonparty KSA, made timely objections to the Rule 45 subpoena duces tecum. A nonparty's failure to timely make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived. *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 570 (D.N.M.1998); Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, § 11:2293 (2005 rev.). Nonetheless, "[i]n unusual circumstances and for good cause, ... the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena]." *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D.Cal.2002) (citations and internal quotation marks omitted); *American Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D.Oh.1999); *In re Motorsports Merchandise Antitrust Litigation*, 186 F.R.D. 344, 349 (W.D.Va.1999); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 21, 34 (D.D.C.1998); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y.1996). Courts have found unusual circumstances where, for instance, the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith. *McCoy*, 211 F.R.D. at 385; *American Electric Power Co.*, 191 F.R.D. at 136–37; *Alexander*, 186 F.R.D. at 34; *Concord Boat Corp.*, 169 F.R.D. at 48. In light of the overbroad nature of the subpoena served by plaintiffs on nonparty KSA, the Court finds defendant's objections to the subpoena have not been waived.

---

**3.** Rule 34, pertaining to the production of documents, provides that "[a] person not a party to the action may be compelled to produce docu-

ments and things or to submit to an inspection as provided in Rule 45." Fed.R.Civ.P. 34(c).

Rule 45(c)(3)(A) sets forth the bases for a court to quash or modify a subpoena. In particular, it provides:

> [o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
>
>> (i) fails to allow reasonable time for compliance;
>>
>> (ii) requires a person who is not a party ... to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business ..., or
>>
>> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>>
>> (iv) subjects a person to undue burden.

Fed.R.Civ.P. 45(c)(3)(A). Additionally, in the event the subpoena "requires disclosure of a trade secret or other confidential research, development, or commercial information, ... the court may ... quash ... the subpoena...." Fed.R.Civ.P. 45(c)(3)(B).

As an initial matter, the party who moves to quash a subpoena has the "burden of persuasion" under Rule 45(c)(3). *Travelers Indem. Co. v. Metropolitan Life Insur. Co.,* 228 F.R.D. 111, 113 (D.Conn.2005); *Concord Boat Corp.,* 169 F.R.D. at 48; *United States v. IBM,* 83 F.R.D. 97, 104 (S.D.N.Y.1979). Here, defendant seeks to quash or, in the alternative, to modify the Rule 45 subpoena on relevancy grounds, contending that the information sought is irrelevant in light of paragraph 5 of the Import Broker Agreement, and the subpoena is generally overly broad since it requests information for a ten year period of time, whereas the Import Broker Agreement covers only three years, and seeks information about KSA's commercial business with other nonparties.

Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter,* 211 F.R.D. 658, 662 (D.Kan.

2003). Specifically, under Rule 45(c)(3)(A), "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" *Travelers Indem. Co.,* 228 F.R.D. at 113, and, in particular, requires the court to consider:

> 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'

*Id.* (quoting *IBM,* 83 F.R.D. at 104).

■ Here, plaintiffs explain the requested documents are relevant "to show that [defendant's] purchasing patterns changed to effectively divert Far East winter cover purchases through other suppliers (including Cantar), at a time when [plaintiff] Moon was to be the exclusive broker of winter covers from the Far East." Response at 5. Accordingly, plaintiffs argue, "documents outside the years covered by the Import Broker Agreement are relevant, because those documents will show [defendant's] purchasing patterns related to winter covers imported from the Far East Region." Response at 5–6. On the other hand, defendant argues the documents plaintiffs seek are irrelevant under paragraph 5 of the Import Broker Agreement, which specifically permits defendant to purchase pool winter covers from any company based in the United States, such as nonparty KSA—even if the covers are imported from the Far East.

Weighing the burden to nonparty KSA against the value of the information to plaintiffs, the Court finds the subpoena imposes an "undue burden" on nonparty KSA. *Travelers Indem. Co.,* 228 F.R.D. at 113. Here, request nos. 1, 2, 3 and 5 broadly seek any and all documents over a ten year or greater [4] period relating to defendant and nonparty KSA regarding pool winter covers. These requests are "overbroad on [their] face and exceed[ ] the bounds of fair discovery" in that they seek (a) information over a ten year or greater period and (b) seek information re-

---

**4.** Only request no. 2 is "limited" to a ten year period; request nos. 1, 3 and 5 contain no temporal limitation.

garding *all* pool winter covers, not only those "within the Far East Region." Moreover, these requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty KSA. *See Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,* 649 F.2d 646, 649 (9th Cir.1980) (discovery restrictions may be even broader where target is nonparty); *Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed.Cir.1993) (affirming order requiring party to first attempt to obtain documents from opposing party rather than nonparty). Since plaintiffs have not shown they have attempted to obtain these documents from defendant, the Court finds that, at this time, requiring nonparty KSA to produce these documents is an undue burden on nonparty KSA.

Similarly, the remaining requests, request nos. 4, 6 and 7,[5] also are "overbroad on [their] face and exceed[ ] the bounds of fair discovery" since they seek documents covering over a ten year or greater period[6] regarding *all* pool winter covers. Moreover, a specific ground to quash a subpoena is that it seeks "commercial information," *see* Fed. R.Civ.P. 45(c)(3)(B), which these requests clearly seek since they seek documents related to nonparty KSA's business relationship with other nonparties, such as Cantar, rather than nonparty KSA's relationship with defendant. Finally, plaintiffs' rely solely on a hearsay conversation between plaintiff Moon and a representative of nonparty KSA to explain the relevancy of these requests, *see* Response at 5–6, Exh. 5, and plaintiffs' reliance on such incompetent evidence is not well taken.

For all these reasons, defendants' request to quash the Rule 45 subpoena served by plaintiffs on nonparty Kwang Sung America, Inc. **IS GRANTED**.

**5.** Request no. 7 inexplicably seeks information from nonparty KSA about communications between defendant and nonparty Cantar, without any showing that nonparty KSA would, in the normal course of business, have such documents.

**6.** Only request no. 4 is "limited" to a ten year period; request nos. 6 and 7 contain no temporal limitation.