**AMINI INNOVATION CORPORATION,**
**Plaintiff,**

v.

**McFERRAN HOME FURNISHINGS,**
**INC., et al., Defendants.**

**No. CV 13–6496 RSWL (SS).**

United States District Court,
C.D. California.

Signed May 19, 2014.

Daniel M. Cislo, Mark D. Nielsen, Cislo & Thomas LLP, Santa Monica, CA, for Jane Seymour.

Scott P. Shaw, Cardon B. Smith, Call & Jensen, Newport Beach, CA, for Defendants.

## MEMORANDUM DECISION AND OR-DER GRANTING NON–PARTY JANE SEYMOUR'S MOTION TO QUASH SUBPOENA (Dkt. No. 32)

SUZANNE H. SEGAL, United States Magistrate Judge.

## I.

## INTRODUCTION

On April 25, 2014, non-party Jane Seymour filed a Motion to Quash a deposition subpoena served by Defendants McFerran Home Furnishings, Inc. and Sharon Lin earlier that month.[1] (Dkt. No. 32). Pursuant to Local Rule 37–2, Seymour and McFerran filed a Joint Stipulation ("Jt. Stip."), including several exhibits and the declaration of Scott Shaw ("Shaw Decl."). (*Id.*). On May 5, 2014, Seymour filed a Supplemental Memorandum ("Seymour Memo."). (Dkt. No. 34). McFerran filed a Supplemental Memorandum on May 6, 2014 ("McFerran Memo."), including the declaration of Cardon B. Smith ("Smith Decl.").[2] (Dkt. No. 36). On May 16, 2014, the Court held a hearing. For the reasons stated below, Seymour's Motion to Quash is GRANTED.

---

1. All further references to "McFerran" shall be deemed to refer to all Defendants in this matter.

2. McFerran simultaneously filed an Application to file its Supplemental Memorandum and Exhibits under seal, which the Court granted on May 9, 2014. (*See* Dkt. Nos. 35 & 39). References to McFerran's Supplemental Memorandum and to Exhibit A of the Smith Declaration will be made to the unredacted versions filed under seal. (*See* Dkt. Nos. 40–41).

## II.

## BACKGROUND FACTS AND THE PARTIES' CONTENTIONS

Seymour, an actress, is identified as a "co-designer" of Plaintiff Amini's Hollywood Swank Bedroom Collections. This furniture collection is the basis of some of the trade dress contentions in this action. Seymour has appeared in advertisements for the Collections and promotes them on her website, www.janeseymour.com. (Jt. Stip. at 28–29).

McFerran's subpoena listed thirty-three topics which fall into three general categories: (1) Amini's allegations and representations in its Complaint, discovery responses, and disclosures, and Amini's alleged damages (Topics 1–4); (2) Amini's Villa Valencia Bedroom Collection, including its copyright registration and design elements; Amini's creation, sales and marketing of the Collection; Amini's allegations that the trade dress of the Collection is not functional and has secondary meaning; the likelihood of consumer confusion between McFerran's products and the Collection; Amini's allegations that Defendants McFerran and Sharon Lin had access to the Collection; McFerran's alleged infringement; and Amini's investigation into the alleged infringement (Topics 5–16, 20, 23, 26–27, 31–33); and (3) with the exception of the copyright allegations, the same information about Amini's Hollywood Swank Bedroom Collections (Topics 12–13, 17–19, 21–22, 24–25, 28–30, 32–33).[3] (See Jt. Stip. at 8–24 & 28–50).

Seymour contends that the subpoena should be quashed because it is unduly burdensome. She claims to lack personal knowledge about every topic listed in the subpoena except the design of the Hollywood Swank Bedroom Collections, and argues that any information she may have about the Collections' design "may be more readily and properly obtained" directly from Amini. (Jt. Stip. at 1). Seymour claims that the subpoena improperly treats her as Amini's 30(b)(6) witness, even though Amini does not intend to call her as a witness and she is "not in a position to provide relevant and admissible testimony that would advance the parties' or the Court's factual understanding of this case." (Id. at 24–25). Seymour states that her "testimony would, at best, be cumulative and duplicative of the party witnesses of Amini itself." (Seymour Memo. at 1).

McFerran contends that Seymour's testimony is not duplicative of other discovery, and that even if it were, as a non-party witness, Seymour may not object to the subpoena on the ground that it is duplicative.[4] (McFerran Memo. at 2). According to McFerran, Seymour's testimony is unique because Plaintiff's witnesses cannot testify as to Seymour's knowledge of her role in the design process, including the design inspirations for her contributions to the Hollywood Swank Bedroom Collections. (Id. at 3). Therefore, McFerran contends that it is entitled to question Seymour about her knowledge of the creation and design features of the Hollywood Swank Bedroom Collections, her knowledge of advertisements regarding the Collections, and her knowledge of the functionality and "acquired distinctiveness"

---

3. The Complaint raises causes of action for both copyright and trade dress infringement with respect to the Villa Valencia Bedroom Collection. (Dkt. No. 1 at 8–14 & Exh. 2). Plaintiff's claims relating to the Hollywood Swank Bedroom Collections are for trade dress violations only. (Id. at 14–23).

4. In light of Seymour's representation in the Joint Stipulation that she had no involvement in the creation and marketing of the Villa Valencia Bedroom Collection, McFerran agreed to narrow the deposition to Topic Nos. 1 (Amini's allegations in the Complaint), 17–19 (design, sales and marketing of the Hollywood Swank Bedroom Collections), 21–22 (Amini's claims that the Collections' trade dress is not functional), 24–25 (Amini's claims that the Collections have second-

ary meaning), and 28–29 (Amini's claims that McFerran's bedroom collections are copies of Amini's Collections). (Jt. Stip. at 28).

In addition to the substantive arguments summarized above, McFerran contends as a procedural matter that Seymour's Motion should be denied because counsel's brief phone call was not a good faith attempt to meet and confer as required by Local Rule 37–1. (Id. at 27–28). While a more substantial pre-filing discussion between counsel would have been preferable, it appears that the telephonic conference of counsel satisfied this District's meet and confer requirements, which authorize telephonic conferences where, as here, counsel are located in different counties. C.D. Cal. Local Rule 37–1.

of the Collections' features. (Jt. Stip. at 2–3).

## III.

## STANDARD

Under the Federal Rules of Civil Procedure, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed.R.Civ.P. 26(b)(1). Relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D.Ind.2002) (internal quotations omitted). Where a non-party possesses potentially relevant information, the party seeking discovery may obtain a subpoena for the evidence pursuant to Rule 45. "The same broad scope of discovery set out in Rule 26 applies to the discovery that may be sought pursuant to Rule 45." *AF Holdings LLC v. Does 1–1,058*, 286 F.R.D. 39, 46 (D.D.C.2012) (citing *Watts v. S.E.C.*, 482 F.3d 501, 507 (D.C.Cir.2007)).

However, the right to discovery, even plainly relevant discovery, is not limitless. According to Rule 26(b)(1), "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)," which in turn provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and

the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C); *see also Watts*, 482 F.3d at 509 (limitations set forth in Rule 26(b)(2)(C) apply to discovery served on non-parties by subpoena).

Furthermore, "[i]n addition to the discovery standards under Rule 26 that are incorporated by Rule 45, Rule 45 itself provides that 'on timely motion, the court for the district where compliance is required must quash or modify a subpoena that ... subjects a person to undue burden.'" *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D.Cal. 2014) (quoting Fed.R.Civ.P. 45(d)(3)(A)(iv)). In determining whether a subpoena poses an undue burden, courts "'weigh the burden to the subpoenaed party against the value of the information to the serving party.'" *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D.Cal.2005) (quoting *Travelers Indem. Co. v. Metropolitan Life Insur. Co.*, 228 F.R.D. 111, 113 (D.Conn.2005)). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998); *see also Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir.1999) (quoting same); *Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646 (9th Cir.1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery."); *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed.Cir.1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances.").

Whether a subpoena imposes an undue burden on a particular witness is a "case specific inquiry." *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D.Ill.2009) (internal quotations and citations omitted). In addition to the need of the requesting party for the information and the burden on the non-party in complying with the subpoena, other factors a court should consider include

the relevance of the requested information and the breadth or specificity of the discovery request. *See Moon,* 232 F.R.D. at 637. Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party. Accordingly, "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation." *Rocky Mountain Medical Management,* 2013 WL 6446704, at *4 (D.Idaho Dec. 5, 2013); *see also Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462, 467 (D.S.D.2011) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Brown v. City of Syracuse,* 648 F.Supp.2d 461, 466 (N.D.N.Y. 2009) (when balancing hardships between requesting party and non-party, court should consider whether there are other sources for obtaining the material); *Arthrex, Inc. v. Parcus Medical, LLC,* 2011 WL 6415540, at *6 (S.D.Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests.").

## IV.

## DISCUSSION

### A. *Elements Of A Trade Dress Claim*

■■■ "Trade dress" refers to the " 'total image of a product' and may include features such as size, shape, color, color combinations, texture or graphics." *Int'l Jensen, Inc. v. Metrosound USA, Inc.,* 4 F.3d 819, 822 (9th Cir.1993). "To state a claim for trade dress infringement, a plaintiff must show that its trade dress '(1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused with [the competing trade dress] by members of the consuming public.' " *One Industries, LLC v. Jim O'Neal Distributing, Inc.,* 578 F.3d 1154, 1166 (9th Cir.2009) (quoting *Int'l Jensen,* 4 F.3d at 823; brackets in original).

■■■ The different elements of a trade dress dispute are typically supported by distinct evidence. First, a court will "consider several factors in determining whether trade dress is functional: '(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture.' " *Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1260 (9th Cir.2001). Second, with respect to "secondary meaning," the Ninth Circuit has explained:

> To succeed on a trade dress infringement based on product design, the plaintiff must show that her design has attained secondary meaning. *Wal–Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 214, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.,* 198 F.3d 1143, 1151 (9th Cir.1999). To show secondary meaning, a plaintiff must demonstrate "a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Japan Telecom v. Japan Telecom Am.,* 287 F.3d 866, 873 (9th Cir.2002) (internal quotation omitted).

*Art Attacks Ink, LLC v. MGA Entertainment Inc.,* 581 F.3d 1138, 1145 (9th Cir.2009). Third, "[l]ikelihood of confusion in the trade dress context is evaluated by reference to the same factors used in the ordinary trademark context: strength of the trade dress, similarity between plaintiff's and defendant's trade dress, evidence of actual confusion, marketing channels used, type of goods and likely degree of purchaser care, and the defendant's intent in selecting its trade dress...." *Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 616 (9th Cir.1989) (internal citations omitted).

## B. The Subpoena Must Be Quashed Because McFerran's Need For Seymour's Testimony Is Slight While Seymour's Burden Is Substantial

The instant dispute turns on whether Seymour possesses material and unique relevant information such that McFerran's need for Seymour's testimony outweighs the burden on Seymour as a non-party in complying with the subpoena. The value of Seymour's testimony in this trade dress action appears to be low or at best unknown and the information that McFerran seeks is obtainable—and for many topics, likely uniquely obtainable—from Amini and its officers. As such, requiring Seymour to appear for a deposition at this late date would be an undue burden. Accordingly, the Court GRANTS Seymour's Motion and QUASHES McFerran's subpoena.

The Court notes that McFerran's delay in serving discovery severely hampers McFerran's ability to show that Seymour has any relevant knowledge, or that if she does, that it is not obtainable from a party witness. McFerran filed its Answer to the Complaint on November 1, 2013 and its Amended Answer on November 22, 2013. (Dkt. Nos. 11 & 14). Counsel represented at the hearing that the parties held their Rule 26(f) in December 2013. On January 28, 2014, the Court issued a Scheduling Order setting May 23, 2014 as the discovery cut-off. Nonetheless, McFerran, without explanation, delayed serving written discovery until April 2014, because as of the date of the hearing—May 16, 2014, one week before the discovery cut-off—Amini's responses to McFerran's interrogatories were not yet due. McFerran's counsel could not inform the Court at the hearing whether its interrogatories even sought information about Seymour to determine whether she has any relevant knowledge or what that knowledge might be. Even if McFerran had propounded interrogatories concerning Seymour, however, because of the late service date, counsel could not have identified specifically what Seymour

knows or show that McFerran was unable to obtain that information from Amini through regular party discovery. As counsel conceded at the hearing, McFerran does not know whether Seymour has relevant information. Accordingly, whether Seymour can actually provide relevant testimony is speculative on the present record.

In addition, McFerran's late service of the subpoena on Seymour, at the *end* of the time allotted for discovery, undermines any claim that her testimony is essential to McFerran's defense. McFerran appears to have served the subpoena on April 9, 2014 or shortly thereafter, even though, as McFerran admits, Seymour's involvement in the design and advertising of the Hollywood Swank Bedroom Collections is plainly alleged in the Complaint.[5] Had McFerran truly considered Seymour a critical witness, it is unlikely that it would have waited until just six weeks before the close of discovery to serve the subpoena.

Even if McFerran were able to articulate the substance of Seymour's knowledge, it is probable that the information would be neither vast in scope nor directly relevant to McFerran's defense. McFerran claims that Seymour alone can testify to her thoughts and inspirations during the design process. However, the evidence offered by McFerran in support of its opposition does not show that Seymour was greatly involved in the design of the Hollywood Swank Bedroom Collections. According to deposition testimony of Amini's President Martin Ploy, Seymour met Amini's CEO Michael Amini and Jack Schmitt, the outside contractor who designed the Hollywood Swank Bedroom Collections, only "once or twice over the course of the last four years" to discuss the product designs of the "five or six collections" attached to her name. (Smith Decl., Exh. A at 66–67). Ploy also stated that Seymour's involvement in the design process consisted primarily of providing her opinions on Schmitt's designs based on her "artistic feel."

---

5. McFerran's counsel signed the subpoena on April 9, 2014. It is unclear whether McFerran served the subpoena on the same day that it was signed. However, Seymour's (and Amini's) counsel wrote to McFerran on April 14, 2014 asking McFerran to withdraw the subpoena and stating that if the subpoena were not withdrawn, Seymour would file a motion to quash. (Shaw Decl., Exh. A).

(*Id.* at 67). McFerran's evidence showing that Seymour attended two meetings in four years to discuss five or six collections does not suggest that Seymour's role in the development of the Hollywood Swank Bedroom Collections was particularly extensive.

Furthermore, even if the record showed that Seymour had more involvement in the creation of the Collections, it appears unlikely that evidence about her inspirations in the design process would be directly relevant to this trade dress action. As noted above, trade dress litigation involves an examination of a design's functionality, secondary meaning, and likelihood of confusion with the public. McFerran has not shown that Seymour is likely to possess information about these specialized topics. The type of information Seymour may possess about the *inspiration* for a given design appears marginal to the issues in this action, such as what the design actually is (regardless of its source), and how it is presented to and received by the public. Seymour is not an obvious witness to ask about survey evidence or the amount of Amini's sales and the number of Amini's customers. Even if Seymour were somehow qualified to testify about these topics, any information Seymour could likely offer would seemingly be cumulative of the testimony of Amini witnesses versed in the technicalities of trade dress protection and litigation. In addition, McFerran has not shown that Seymour even knows that McFerran's products exist, much less that she has any information or opinions bearing on whether McFerran's products infringe on Amini's trade dress.

Even if the design process were relevant to this trade dress action, however, the information that Seymour might be expected to possess about her role in that process and her participation in any advertisements is not necessarily unique to her. McFerran has taken the depositions of Martin Ploy, Michael Amini, and Jack Schmitt, and asked each witness about Seymour. (Seymour Memo. at 1). As such, McFerran already has information—or at least had the opportunity to obtain information—about Seymour's contributions to the Hollywood Swank Bedroom Collections. McFerran has not identified any information that Seymour could provide that is both material to the claims and allegations in this action and that has not been, or could not have been, obtained from party witnesses or Schmitt, the Collections' designer.[6]

Finally, the sheer breadth of the deposition topics attached to the subpoena gives strength to Seymour's argument that McFerran's motive may not have been to obtain actual discovery, but some sort of strategic advantage. It is obvious in the context of this action that Seymour was not a proper witness for nearly all of the subpoena's topics. Seymour is not Amini's 30(b)(6) witness and there is no reason for her to have read, or even know about, what Amini specifically alleged in the Complaint or stated in its discovery responses. The generic nature of the deposition topics calls into question the genuineness of McFerran's interest in Seymour as a witness, as the topics do not appear to have been framed with her in mind at all.

In contrast to the relatively low value of Seymour's testimony, the burden on Seymour is substantial. Preparing and sitting for a deposition is always a burden, even when documents are not requested, particularly for a non-party. Additionally, because the deposition would have to proceed immediately to be completed before the discovery cut-off, the burden would be substantially greater. This is particularly true for Sey-

---

**6.** McFerran's repeated assertion, unsupported by case law, that as a third party witness, Seymour does not have the "right" to object to a subpoena on the ground that it is duplicative is incorrect. (*See* McFerran Memo. at 3). Whether the information sought by a subpoena is cumulative or duplicative goes directly to the requesting party's need for the information, which a court must consider in weighing the burden on the producing non-party. *See Rocky Mountain Medical Management,* 2013 WL 6446704, at *4; *Precourt,*

280 F.R.D. at 467; *Brown,* 648 F.Supp.2d at 466; *Arthrex,* 2011 WL 6415540, at *6. Furthermore, whether McFerran actually obtained all the information it now claims to need from Seymour in its depositions of other witnesses is not dispositive, as further discovery may be denied if the "party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed.R.Civ.P. 26(b)(2)(C)(ii). McFerran has not shown that it could not have obtained the requested information from party witnesses.

mour, as she may not even be in the country at present. According to Seymour's counsel, Seymour has residences in California and England. The record does not disclose Seymour's current location. Therefore, the Court cannot assume that Seymour is even in the District. McFerran has not shown that Seymour's testimony is essential, and the burden on Seymour in complying with the subpoena would be great. Accordingly, the balance of interests weighs strongly in favor of Seymour.

## V.

## CONCLUSION

For the reasons set forth above, third party Seymour's Motion to Quash Deposition Subpoena is GRANTED.