T.C. Memo. 2014-245

UNITED STATES TAX COURT

AMAZON.COM, INC. & SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31197-12.                    Filed December 10, 2014.

<u>John B. Magee</u>, <u>Sanford W. Stark</u>, <u>Julia Mara Kazaks</u>, and <u>Rajiv Madan</u>, for petitioner.

<u>Jill A. Frisch</u>, <u>Melissa D. Lang</u>, <u>Lloyd T. Silberzweig</u>, <u>Anne O'Brien Hintermeister</u>, and <u>Mary E. Wynne</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  The Internal Revenue Service (IRS or respondent) determined under section 482 substantial deficiencies in petitioner's Federal income tax

[*2] for 2005 and 2006.[1] The deficiencies stem from a cost sharing arrangement (CSA) executed between petitioner and Amazon Europe Holdings Technologies SCS (AEHT), a Luxembourg affiliate. In entering into the CSA, petitioner transferred preexisting intangible assets to AEHT; the parties agreed to share future intangible development costs (IDCs). This case will require the Court to determine the proper amount of AEHT's buy-in obligation with respect to the transferred property (including technology, trademarks, and customer information) under section 1.482-7(a)(2) and (g)(2), Income Tax Regs.[2] The Court will also be required to assess the portion of petitioner's costs properly allocable to IDCs, which will dictate in part the cost-sharing payments that AEHT is required to make. See sec. 1.482-7(a)(1), (d)(1), Income Tax Regs.

The Court held a partial trial of this case on October 24, 2014, in Washington, D.C., and a further trial between November 3 and November 26, 2014, in Seattle, Washington. The Court has scheduled further trial proceedings in Seattle between December 15 and December 23, 2014.

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the tax years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Section 1.482-7, Income Tax Regs., was redesignated section 1.482-7A, Income Tax Regs., with the promulgation of new regulations effective January 5, 2009. See T.D. 9441, 2009-7 I.R.B. 460.

**[*3]**  The question currently before the Court is whether to quash a trial subpoena served by the IRS on Jeff Bezos, the founder, chairman of the board of directors, and chief executive officer (CEO) of Amazon.com.  On October 21, 2014, petitioner filed a motion to quash or modify subpoena.  Respondent filed a response on November 25, 2014, and the Court subsequently heard oral argument on the motion.  As stated at the conclusion of that argument, we will grant the motion to quash.

## Background

The parties conducted extensive discovery in this case.  Respondent initially sought to depose up to 48 fact witnesses, and petitioner filed a motion for protective order pursuant to Rule 103 seeking to limit the total number of fact witnesses that respondent could depose.  Respondent filed a response indicating that he wished to depose only 16 party and nonparty fact witnesses; respondent did not list Mr. Bezos as one of those potential witnesses.  By order dated April 25, 2014, the Court permitted respondent to depose a total of 12 party and nonparty fact witnesses.  Mr. Bezos was not one of the individuals whom respondent elected to depose.

Respondent first identified Mr. Bezos as a potential witness in September 2014.  On October 14, 2014, counsel for petitioner accepted service of a trial sub-

[*4] poena ad testificandum on Mr. Bezos. In his pretrial memorandum, respondent listed Mr. Bezos as a potential witness and indicated that the topics of his testimony would include the following: the history of Amazon; Amazon's growth and success; on-line retail and other businesses and products; Amazon's e-commerce technology; and Amazon's restructuring between 2004 and 2006. More recently, respondent stated his desire to elicit testimony from Mr. Bezos on the following 15 subjects: "the Amazon brand"; early spending on marketing and advertising; the financial metrics used by Amazon in making important decisions; Amazon's internal discount rate in evaluating investments; statements made in Amazon's 1997 and 1999 letters to shareholders and certain annual reports; Amazon's intellectual property management; Amazon's R&D budget; Amazon's growth rates; early Amazon risks versus risks in 2004-2005; Amazon's geographic risks; Amazon's business strategy as "a flywheel model"; statements in petitioner's expert witness reports; management's financial projections; the transfer of intangibles to AEHT; and Mr. Bezos' "vision for Amazon."

On October 21, 2014, petitioner filed a motion to quash the trial subpoena. Petitioner later supplemented this motion with an affidavit from Mr. Bezos. The affidavit avers that appearing at trial would require a significant commitment of

[*5] time by Mr. Bezos and would cause a substantial disruption of his management responsibilities during Amazon's peak holiday season.

The Court indicated that it would postpone ruling on the motion to quash until after petitioner had completed presentation of its case in chief, which would enable the Court better to assess respondent's need for Mr. Bezos' testimony. To date, the Court has heard 17 days of trial testimony, including the testimony of 21 Amazon fact witnesses. Of these 21 fact witnesses, six are or were members of Amazon's senior leadership team, known at Amazon as the "S-Team." Members of the S-Team reported directly to Mr. Bezos, regularly attended meetings with him (including certain board of directors meetings), and were thoroughly familiar with his decisionmaking process and his customer-centric philosophy for running the company.

The S-Team members who have testified so far include Amazon's chief technology officers, one of whom functioned as the company's number two official, as well as Amazon's chief financial officer, head of international retail, head of operations, and head of business development. Respondent has listed two additional S-Team members as potential witnesses, and both are expected to testify when trial resumes on December 15, 2014. Of the eight current and former S-Team members who have testified or will testify, respondent deposed seven.

**[*6]** The 21 fact witnesses who have testified so far have thoroughly covered each of the 15 subjects on which respondent proposes to examine Mr. Bezos. The Court has heard testimony from all relevant departments at Amazon, including technology, operations, finance, and tax. This testimony has spanned all periods of Amazon's life as a public company, from 1997 to the present. The vast majority of the subjects listed by respondent have been covered by testimony of three or more Amazon fact witnesses, including senior level managers, middle managers, and junior staffers (who actually prepared the documents that are the subject of respondent's interest). Respondent has listed another ten Amazon employees as "may call" witnesses for his case in chief.

On November 26, 2014, the Court heard oral argument on the motion to quash. Respondent informed the Court that, if Mr. Bezos is called, his testimony "is likely to be less than a day." Counsel for respondent stated that, because Mr. Bezos had not been deposed, respondent might not call him as a witness even if the motion to quash is denied.

## Discussion

In the Tax Court, when a subpoena is issued solely for the attendance of a witness at trial and that person objects thereto, he or she may move for a protective order pursuant to Rule 103(a) or for an order quashing or modifying the subpoena

**[\*7]** pursuant to rule 45(d) of the Federal Rules of Civil Procedure. See

Grandbouche v. Commissioner, 99 T.C. 604, 616-617 (1992); Rule 1(b) ("Where

in any instance there is no applicable rule," the Court may give "particular weight

to the Federal Rules of Civil Procedure.").[3] Under either of these rules, the Court

may quash a subpoena if it places an "undue burden" on the person subpoenaed.

See Rule 103(a) (authorizing the Court to "make any order which justice requires

to protect a party or other person from * * * undue burden or expense"); Fed. R.

Civ. P. 45(d)(3) (authorizing court to quash a subpoena if it "subjects a person to

undue burden").[4]

---

[3]Before 1991, Fed. R. Civ. P. 45(b) (now rule 45(d)) provided for a motion to quash only a subpoena duces tecum that was thought to be improvidently issued; there was no comparable provision concerning subpoenas ad testificandum (compelling attendance of a witness at a trial, hearing, or deposition). See Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, sec. 2455, Subpoena for the Attendance of a Witness (3d ed. 2008). Rule 147(b) is modeled on the pre-1991 version of Fed. R. Civ. P. 45. See Rule 147 note, 60 T.C. 1057, 1137. Rule 147(b) applies only to subpoenas duces tecum. See Grandbouche, 99 T.C. at 615, 620 (declining to award costs with respect to initial subpoena duces tecum but awarding costs for compliance with subsequent subpoena); Stern v. Commissioner, 74 T.C. 1075, 1084 (1980) (declining to award costs for compliance with subpoena duces tecum); Bane v. Commissioner, T.C. Memo. 1971-31, 30 T.C.M. (CCH) 125, 128-129 (granting motion to quash subpoena duces tecum that sought irrelevant information).

[4]The term "undue burden" was added to the text of Fed. R. Civ. P. 45 in 1991, replacing the "unreasonable and oppressive" terminology used in the pre-1991 version. This modification was purely semantic and was not intended to

(continued...)

**[\*8]**    The party moving to quash a subpoena bears the burden of persuasion.

Goodman v. United States, 369 F.2d 166, 169 (9th Cir. 1966); Moon v. SCP Pool

Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005).  Whether to quash or modify a

subpoena lies within the court's discretion.  See, e.g., Exxon Shipping Co. v. U.S.

Dept. of Interior, 34 F.3d 774 (9th Cir. 1994); Grandbouche, 99 T.C. at 617.  In

exercising this discretion, the court must balance the burden upon the subpoenaed

party against the value of the information to the serving party.  Factors to be

considered include the relevance of the information sought, the serving party's

need for that information, the breadth of the request, the time period covered by

the subpoena, the particularity of the request, and the burden imposed.  Moon, 232

F.R.D. at 636; Televisa, S.A. de C.V. v. Univision Commc'ns, Inc., No. CV

05-3444 PSGMANX, 2008 WL 4951213, at \*2 (C.D. Cal. Nov. 17, 2008).  This

Court has applied essentially the same balancing test when deciding whether to

quash or modify a subpoena for production of documents under Rule 147(b).  See

<hr />

[4](...continued)
change existing law.  See Advisory Committee Note to the 1991 Amendment to
Rule 45, 134 F.R.D. at 668; In re Cnty. of Orange, 208 B.R. 117, 120 n.2
(S.D.N.Y. 1997).  Rule 147(b), governing subpoenas duces tecum, retains the pre-
1991 terminology of the Federal rule and provides that the Court may quash or
modify a subpoena if it is "unreasonable and oppressive."  Because "undue
burden" and "unreasonable and oppressive" have essentially the same meaning,
cases interpreting Rule 147(b) may, in appropriate circumstances, be considered in
deciding whether to quash a subpoena seeking only testimony.

**[*9]** Durkin v. Commissioner, 87 T.C. 1329, 1401-1403 (1986) (weighing burden on subpoenaed party against likely probative value of the evidence sought), aff'd, 872 F.2d 1271 (7th Cir. 1989); Hunt v. Commissioner, T.C. Memo. 1990-248, 59 T.C.M. (CCH) 635, 651-652 (employing balancing test).

Subpoenas seeking the testimony of CEOs and other high-level corporate officers may warrant special scrutiny. In such cases, courts have required the requesting party to show that the executive possesses unique knowledge of relevant facts and that the information sought cannot be obtained by less burdensome means. See, e.g., Thomas v. Int'l Bus. Machs., 48 F.3d 478, 483-484 (10th Cir. 1995) (upholding protective order barring deposition of top executive where lower level employees with direct knowledge of the facts were available for deposition and where executive lacked personal knowledge about plaintiff's case); Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) (affirming District Court's holding that defendant's president need not be deposed until plaintiff had deposed lower level employees, where president was not shown to have unique knowledge of the facts); Baine v. Gen. Motors Corp., 141 F.R.D. 332, 334-335 (M.D. Ala. 1991) (stating that for a top executive to be deposed, the prospective deponent must have unique personal knowledge of relevant facts).

**[*10]** With this framework in mind, we consider how the balancing test applies to the facts here. The parties agree that the evidence sought from Mr. Bezos would be relevant. Indeed, the fact that the 15 subjects on which respondent proposes to examine Mr. Bezos have been covered at length by numerous witnesses confirms the relevance of these topics. This factor weighs in favor of denying the motion to quash.

On the other hand, we find that respondent's need for the requested information is slight because Mr. Bezos' testimony would almost certainly be cumulative. Whether the information sought is cumulative or duplicative goes directly to the requesting party's need for that evidence. See Brown v. City of Syracuse, 648 F. Supp. 2d 461, 466 (N.D.N.Y. 2009); Fed. R. Evid. 403 (permitting court to exclude "cumulative evidence").

Here, 21 Amazon fact witnesses have already testified and six of those witnesses have been S-Team members who reported directly to Mr. Bezos. These witnesses are intimately familiar with Mr. Bezos' management style and corporate philosophy, and they have covered, in depth, all 15 subjects about which respondent proposes to question him. Respondent has not identified any relevant topic not covered by prior testimony or any subject about which Mr. Bezos is alleged to

**[*11]** possess unique knowledge.[5]  Respondent did not seek to depose Mr. Bezos and indicated that Mr. Bezos might not be called even if the motion to quash were denied.  Collectively, these facts demonstrate that respondent's need for Mr. Bezos' testimony is minimal and weigh heavily in favor of granting the motion to quash.

The breadth and generality of the information sought likewise cut in favor of quashing the subpoena.  Respondent seeks to question Mr. Bezos on a wide range of topics covering a long time span, from 1997 to the present.  Respondent has already elicited testimony from witnesses who dealt with the relevant topics on a day-to-day basis and who testified about them with a granular level of detail.  High-level testimony from Mr. Bezos on these topics would add little.  Preparing him to testify in any detail on such a broad range of topics would be exceptionally time consuming.

For similar reasons, we conclude that the burden imposed on Mr. Bezos would be great.  Preparing for and delivering trial testimony is always a burden.  Amini Innovation Corp. v. McFerran Home Furnishings, Inc., 300 F.R.D. 406, 412

---

[5]Respondent indicated a desire to confirm the authenticity of certain public statements that Mr. Bezos has made, including statements in letters to shareholders contained in Amazon's annual reports.  Petitioner subsequently agreed to stipulate the authenticity of all public statements by Mr. Bezos.

**[*12]** (C.D. Cal. May 19, 2014) (deposition). That would be especially true here given the broad range of topics on which respondent proposes to question Mr. Bezos. Respondent predicts that his testimony "is likely to be less than a day," but this is not a forecast from which Mr. Bezos would derive much comfort. No other fact witness has testified for more than three hours.

Mr. Bezos is the CEO of one of the largest companies in the United States. The possibility that he could be required to testify for a full day on subjects that have been comprehensively covered by other witnesses confirms the burdensome nature of respondent's request. Petitioner has not invoked the special rule for high-level officers as an absolute shield: six senior executives from Amazon have already testified, and two more are expected to testify before the trial is concluded. The invocation of this special rule with respect to Mr. Bezos in particular is amply justified under the circumstances.

In sum, after balancing respondent's need for the requested testimony against the burden on Mr. Bezos, we conclude that the burden imposed on him would be "undue." We will therefore grant petitioner's motion to quash subpoena.

<u>An appropriate order will be issued</u>.