UNITED STATES and State of New York EX REL. Xiomary ORTIZ and Joseph Gaston, Plaintiffs,

v.

MOUNT SINAI HOSPITAL, Mount Sinai School of Medicine, and Mount Sinai Radiology Associates, Defendants.

13–CV–04735 (RMB) (BCM)

United States District Court, S.D. New York.

Signed March 11, 2016

Richard F. Bernstein, Timothy J. McInnis, Law Office of Timothy J. McInnis, New York, NY, for Plaintiffs.

Scott Roger Landau, Office of the General Counsel, Martin Tomas Murphy, Wendy Helene Schwartz, Binder & Schwartz LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

### BARBARA MOSES, United States Magistrate Judge

Before the Court in this *qui tam* action is a motion by plaintiff-relators to compel a nonparty agency, headquartered in Washington, D.C., to comply with subpoenas *duces tecum*. The motion was made in the United States District Court for the District of the District of Columbia pursuant to Fed. R. Civ. P. 37(a)(2) and 45(d)(2)(B)(i), then transferred to this Court pursuant to Fed. R. Civ. P. 45(f). The agency did not serve any objections to the subpoenas and does not oppose the motion to compel. Defendants did object to the subpoenas—and now oppose the motion to compel—but never filed a motion to quash or for a protective order.

For the reasons set forth below, the motion is GRANTED with respect to one of the two subpoenas at issue, namely, plaintiff-relators' subpoena to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services (CMS), dated February 23, 2016, which seeks "[a]ll part B claims, payments, a denials data and information" for a specified group biller and for an attached list of individual billing providers. The agency must produce all such claims for the period January 1, 2007 through February 1, 2011 (not "2/1/1022" as the date appears on the face of the subpoena).[1]

## BACKGROUND

Plaintiff-relators Xiomary Ortiz and Joseph Gaston allege that defendants Mount Sinai Hospital, Mount Sinai School of Medicine, and Mount Sinai Radiology Associates (collectively Mount Sinai) violated the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* (FCA) and the New York State False Claims Act, N.Y. State Fin. L. § 187 *et seq.* (N.Y.SFCA), by overcharging both the federal Medicare program and the New York State Medicaid program for radiology services performed by the Mount Sinai Outpatient Radiology Department.[2] The Amended Complaint, filed November 12, 2014 (Dkt. No. 27) alleges that defendants' misconduct began "at least as early as 2001" and continued until "the end of 2010 or the start of 2011," when billing responsibilities for the Outpatient Radiology Department were outsourced to a third-party vendor. Am. Compl. ¶ 68.

On November 9, 2015, the Hon. Richard M. Berman issued a Decision & Order (Dkt. No. 44) denying defendants' motion to dismiss the Amended Complaint. Judge Berman ruled that plaintiff-relators met the particularity requirement of Fed. R. Civ. P. 9(b) by, among other things, describing the nature of each allegedly fraudulent billing practice in detail and presenting "example false claims" that "enable the defendant to identify similar claims." Dec. & Order 9 (quoting *United*

---

1. For ease of reference, the subpoena with which CMS must comply is the second subpoena attached as Exhibit A to the February 26, 2016 letter to this Court from defendants (Dkt. No. 100–1, at 8–12).

2. Medicare, which partially underwrites the medical expenses of elderly and disabled persons, is funded by the federal government and administered by CMS. Am. Compl. ¶ 6. Medicaid, which partially underwrites the medical expenses of indigent persons, is paid for by a combination of federal, state and local funds and is administered, in New York, by the New York Department of Health (DOH). *Id.* ¶ 9. The government agencies that are the real parties in interest in this action declined to intervene.

*States ex rel. Kester v. Novartis Pharmaceuticals Corp.,* 23 F.Supp.3d 242, 260 (S.D.N.Y.2014)). *See also* Dec. & Order 16–22 (summarizing various "examples of improper billing practices and claims" appearing in the Amended Complaint).

On December 7, 2015, Judge Berman so-ordered the parties' Consent Discovery Confidentiality Order (Dkt. No. 53), which provides that any material produced by CMS or DOH and containing "protected health information," as that term is defined in regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA), will automatically be designated "confidential" under the terms of the Order, with attendant restrictions on its use and dissemination. On January 12, 2016, Judge Berman referred the case to this Court for general pretrial management, including scheduling, discovery, and non-dispositive pretrial motions.

### THE CMS SUBPOENAS

After the motion to dismiss was denied, plaintiff-relators began serving both party and non-party discovery requests. Their initial subpoena to CMS, dated November 27, 2015 (the November 27 Subpoena), requested a broad range of Medicare billing claims data for a variety of departments and practices within Mount Sinai. (Dkt. No. 97–1.)

On January 21, 2016, the Court ordered defendants to provide plaintiff-relators with the names and individual billing identification numbers of the providers who worked in the Outpatient Radiology De-

partment from January 1, 2007 through February 1, 2011.[3] Plaintiff-relators sought this information in order to, among other things, narrow their CMS subpoena to the most relevant claims data. As their counsel explained, "We don't want things we don't need." Jan. 21, 2016 Tr. (Dkt. No. 77), at 25:17.

On January 25, 2016, defendants served written objections to the November 27 Subpoena (Dkt. No. 97–5), complaining, among other things, that it was overbroad insofar as it sought discovery of claims beyond those that plaintiff-relators identified in the Amended Complaint, that it would lead to the production of thousands of claims of dubious relevance to this action, and that those claims would reveal confidential health information concerning Mount Sinai patients.

On February 2, 2016, plaintiff-relators served a second subpoena on CMS (the February 2 Subpoena), limited to the Outpatient Radiology Department and the individual providers associated with that department, as recently disclosed by defendants. On February 16, 2016, plaintiffs served a "corrected" subpoena on CMS (the February 16 Subpoena), also limited to the Outpatient Radiology Department, to which defendants served objections on February 18, 2016. (Dkt. Nos. 97–3, 97–7.) The November 27, February 2, and February 16 Subpoenas were addressed to the agency's Washington, D.C. headquarters, but instructed CMS to produce the claims data to plaintiff-relators' counsel in New York City.

---

**3.** Although the overbilling allegedly began well before 2007, the applicable statute of limitations for the FCA is six years. 31 U.S.C. § 3731(b)(1). The statute of limitations for the NYFCA is ten years, N.Y. State Fin. L. § 192(1), but the FCA permits a federal district court to exercise jurisdiction over the state claims only insofar as they involve "the same transaction or occurrence as an action brought under [the FCA]" 31 U.S.C. § 3732(b), *See also* 28 U.S.C. § 1367(a) (federal supplemental jurisdiction permitted for claims "that are so related to [federal] claims ... that they form part of the same case or controversy under Article III of the United States Constitution").

In a letter dated February 4, 2016 (Dkt. No. 81), plaintiff-relators requested that this Court sign a new Discovery Confidentiality Order, specifically designating all documents produced by CMS in response to the November 27 Subpoena as "Confidential" under the previously-issued Consent Discovery Confidentiality Order, and an order compelling CMS to comply with the November 27 Subpoena. Defendants, for their part, did not object to the Discovery Confidentiality Order, but opposed the issuance of any order to compel, arguing that the subpoenas "would sweep in thousands of highly sensitive HIPAA-protected records prior to any determination of actual need," which would "not contribute to the resolution of the threshold question of liability." (Dkt. No. 79–1, at 9.) In defendants' view, the Court should not even address the CMS subpoenas until defendants' own document production was complete "and the parties can meet and confer in a more informed manner on the scope of the data that Relators seek." (*Id.*)

At a conference on February 9, 2016, the Court expressed doubt as to whether the request for an order to compel was properly made in the Southern District of New York, given that a document subpoena may only command production "at a place within 100 miles of where the person [to whom the subpoena is directed] resides, is employed, or regularly transacts business in person," Fed. R. Civ. P. 45(c)(2)(A), and a motion to compel production in response to such a subpoena must be made in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). *See also* Fed. R. Civ. P. 37(a) (motion to compel a nonparty to comply with a subpoena "must be made in the court where the discovery is or will be taken"). Thereafter, the Court signed the Discovery Confidentiality Order (Dkt. No. 87), but did not rule on plaintiff-relators' request for an order to compel, noting, "On the present record, the Court cannot conclude that the request is properly before it." (Dkt. No. 85, at 3.)

On February 22, 2016, plaintiff-relators filed a letter-motion pursuant to Local Civil Rule 37.2 (Dkt. No. 97), asking this Court to "overrule" defendants' objections to the CMS subpoenas, which had "put a stranglehold on the production of claims data." Plaintiff-relators explained that although CMS was "ready to provide us with requested information" in the form of "a few diskettes," it was not "able to comply with the subpoenas ... because of Defendants' objections." The Court scheduled a conference for March 7, 2016.

On February 23, 2016, plaintiff-relators served two more subpoenas on CMS (the February 23 Subpoenas), this time commanding production at a Washington, D.C. law firm in accordance with Fed. R. Civ. P. 45(c)(2)(A). One of the February 23 Subpoenas (Dkt. No. 101–1, at 4–7) was modeled on the November 27 Subpoena, seeking a broad range of billing claims data. The second February 23 Subpoena (Dkt. No. 100–1, at 8–12) was modeled on the February 16 Subpoena, limited to the Outpatient Radiology Department and the individual billers associated with that department. On February 25, 2016, defendants served objections to the February 23 Subpoenas. (Dkt. No. 100–2.)

On February 26, 2016, plaintiff-relators filed a motion in the United States District Court for the District of the District of Columbia, on notice to CMS as well as defendants, seeking an order compelling compliance with the February 23 Subpoenas or, in the alternative, an order transferring the motion to the Southern District of New York pursuant to Fed. R. Civ. P. 45(f). According to plaintiff-relators, CMS "approved the form of both orders and has

consented to their being entered." (Dkt. No. 100–4, at 24.)

Defendants did not file any opposition to that motion in the District of the District of Columbia. They did, however, file a February 26, 2016 letter in this Court (Dkt. No. 100), responding to plaintiff-relators' February 22 letter-motion and arguing, among other things, that although the CMS data might consist of only a few diskettes, "the claims data is only a starting point for Relators, whose next step will be to issue subpoenas for the underlying medical records." (*Id.* at 3.) Once again, defendants urged that non-party discovery be held in abeyance until defendants completed their own document production, which would provide "more than sufficient information for Relators to test the validity" of their overbilling theories. (*Id.* at 4.)

On February 27, 2016, plaintiff-relators served two more subpoenas on CMS (the February 27 Subpoenas), identical to the February 23 Subpoenas except for minor corrections made to clarify the relevant date range of the requested data. (Dkt. Nos. 103–4, 103–5.)

On February 29, 2016, the District of the District of Columbia transferred the motion to compel to the Southern District of New York. (Dkt. No. 103–1.) On March 1, 2016, defendants served objections to the February 27 Subpoenas. (Dkt. Nos. 105–1, 105–2.)

Although defendants served objections to each CMS subpoena, they never moved to quash or modify any of them, in any court. Nor did defendants oppose the motion to compel in the District of the District of Columbia. They did submit a final letter to this Court on March 3, 2016 (Dkt. No. 104), reiterating their opposition to any order compelling CMS to produce.

## DISCUSSION

### 1. The Authority of This Court to Compel Production by CMS

█ Under Fed. R. Civ. P. 45(a)(2), as amended in 2013, all subpoenas are issued "from the court where the action is pending." The CMS subpoenas were thus properly issued from this Court. However, a subpoena seeking documents, electronically stored information, or tangible things must command their production at a place within 100 miles of "where the commanded person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). Moreover, if a motion to compel is necessary, the motion must be made in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). *See also* Fed. R. Civ. P. 37(a)(2) ("A motion for an order to a nonparty must be made in the court where the discovery is or will be taken."). That court (known as the compliance court) may then, either with the consent of the nonparty or under "exceptional circumstances," transfer the motion to the issuing court. Fed. R. Civ. P. 45(f).

In this case, it is not clear why CMS has not yet produced the Medicare claims data sought by plaintiff-relators' subpoenas. According to plaintiff-relators, the agency is ready, willing, and able to produce the requested data. Consistent with that representation, CMS never served any objections to the subpoenas, nor any opposition—in any court—to the motion to compel. Any concerns regarding the confidentiality of protected health information were met on February 11, 2016, when this Court issued a Discovery Confidentiality Order (Dkt. No. 87), in the form requested by the agency, specifically designating all documents produced in response to the November 27 Subpoena as "Confiden-

tial."[4] Although the November 27, February 2, and February 16 Subpoenas commanded an agency in Washington, D.C. to produce documents in New York—in apparent violation of Rule 45(c)(2)(A)—the February 23 Subpoenas designated Washington as the place of production.[5]

■ Nor could defendants' objections prevent CMS from responding to the subpoenas. According to plaintiff-relators, those objections "put a stranglehold on the production of claims data" by somehow rendering the agency unable to turn over the requested data. (Dkt. No. 97, at 2–3.) In fact, while nothing in Rule 45 prevents a party from serving objections to a non-party subpoena,[6] such objections, standing alone, have no effect on the non-party's obligation to respond to the subpoena. "A party cannot simply object to a subpoena served on a non-party, but rather must move to quash or seek a protective order." *Brown v. Deputy No. 1*, 2014 WL 842946, at *3 (S.D.Cal. Mar. 4, 2014) *reconsideration denied*, 2014 WL 4961189 (S.D.Cal. Oct. 3, 2014).[7] Where, as here, the objecting party has not made (much less won) a motion to quash or for a protective order, the subpoena, if otherwise enforceable, remains so, and the non-party ignores its

dictates at some peril, including a risk of contempt pursuant to Fed. R. Civ. P. 45(g).

■ Nonetheless, faced with noncompliance by CMS—even if that noncompliance was based on a mistaken belief concerning the legal import of defendants' objections—plaintiff-relators' remedy was a motion to compel CMS to produce the requested data, made in the district where compliance was required. *See* Fed. R. Civ. P. 45(d)(2)(B)(i); *cf. JMC Restaurant Holdings, LLC v. Pevida*, 2015 WL 2240492 (E.D.N.Y. May 12, 2015) (denying motion to compel where the subpoena in question commanded production of documents in Manhattan, without prejudice to renewal of the motion in the Southern District of New York). After a number of false starts, plaintiff-relators made such a motion, in the District of the District of Columbia, with respect to the February 23 Subpoenas. That court then transferred the motion to the Southern District of New York, pursuant to Rule 45(f), such that this Court now has jurisdiction to decide it.

### 2. Defendants' Standing to Oppose the Motion

■ Even where a party properly moves (in the correct court) to quash a

---

4. Since then, the Court has issued yet another Discovery Confidentiality Order (Dkt. No. 106), updated to reflect the subpoena with which CMS must now comply.

5. In a February 29, 2016 letter to this Court, plaintiff-relators stated for the first time that CMS had regional offices in New York City, where it regularly transacts business, and suggested that for this reason its earlier subpoenas were in compliance with Rule 45(c)(2)(A). By then, however, plaintiff-relators had "chosen to modify the subpoenas rather than address the significance" of the regional office. (Dkt. No. 101, at 3 n.3.)

6. In commenting on 2013 amendments to subsection (a)(4)—which requires that a document subpoena be served on each party before it is served on the nonparty to whom it is directed—the Advisory Committee noted that the "original purpose" of this provision was to "enabl[e] the other parties to object" or serve a subpoena for additional material. Fed. R. Civ. P. 45, advisory committee's note to the 2013 amendments.

7. *See also E.E.O.C. v. Unit Drilling Co.*, 2014 WL 130551, at *2 (N.D.Okla. Jan. 13, 2014) ("a party objecting to a subpoena served on a non-party must move to quash or seek a protective order") (citing *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D.Cal.2005)); *Erickson v. Microaire Surgical Instruments LLC*, 2010 WL 1881946, at *2 (W.D.Wash. May 6, 2010) ("[a] party objecting to a subpoena served on a non-party must move to quash").

non-party subpoena, it must establish that it has standing to quash. This can be a difficult task. "A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y.2004). "[T]he claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoenas was served." *Samad Bros., Inc. v. Bokara Rug Co. Inc.*, 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010). *See also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.").

██ In this case, defendants claim a "legitimate privacy interest" in the medical and billing information concerning Mount Sinai's patients that will be produced pursuant to the February 23 Subpoenas. Defs.' Feb. 26, 2016 Ltr. (Dkt. No. 100), at 3. The language that defendants quote, however, is taken from a case in which the plaintiff—a woman suing her former employer for gender and age discrimination—sought to quash a subpoena directed at a subsequent employer, in order to protect information that was personal to her. *Mirkin v. Winston Resources, LLC*, 2008 WL 4861840, at *1 (S.D.N.Y. Nov. 10, 2008) ("Plaintiff has a legitimate privacy interest in information regarding her performance at a subsequent employer and, therefore, has standing to bring her motion."). Defendants cite no authority for the proposition that a party may move to

quash a nonparty subpoena in order to protect the privacy interests of other nonparties.

Moreover, in this case defendants have consented to the entry of three confidentiality orders, all designed to protect the precise interest they now cite as the basis of their standing: the Consent Discovery Confidentiality Order (Dkt. No. 53), which applies to all discovery in this action, and two Discovery Confidentiality Orders (Dkt. Nos. 87, 106), which apply specifically to data produced by CMS. Defendants do not contend that these orders are inadequate in any way to protect their patients' privacy interests. To the contrary: in response to plaintiff-relators' Rule 34 document requests, defendants themselves are in the process of producing numerous documents revealing medical and billing information concerning Mount Sinai patients, relying on the Consent Discovery Confidentiality Order to safeguard those patients' privacy interests. The fact that the CMS subpoenas may produce more information, concerning more patients, does not alter the fundamental privacy calculus. Defendants therefore lack standing to quash the CMS subpoenas. For the same reasons, they lack standing to oppose plaintiff-relators' motion to compel.[8]

### 3. The February 23 Subpoenas

██ Although defendants' failure to move to quash, coupled with their lack of standing, relieves the Court of any obligation to examine their remaining contentions, the Court has an independent obligation to administer the discovery rules "to secure the just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1, which in turn requires that discovery be limited to nonprivileged matter

---

**8.** Any other result would permit a party to do indirectly (by serving objections and waiting for the opposing party to move to compel) what it could not do directly (by moving to quash).

that is relevant to a party's claim or defense and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

In this action, plaintiff-relators allege that Medicare and Medicaid billing fraud occurred within the Mount Sinai Outpatient Radiology Department. They do not allege that the fraud extended to other departments. For that reason, after first serving the November 27 Subpoena, which was very broad, they sought a list of the names and individual billing identification numbers of the providers in the Outpatient Radiology Department. The purpose of the list was "to verify that we've gotten the complete universe of claims during the relevant time period." Jan. 21, 2016 Tr. at 24. Their counsel explained that he did not want to "waste[ ] time" with data outside that universe, because "[i]t's not going to help me." *Id.* at 25. Upon receiving the names and individual billing identification numbers associated with the Outpatient Radiology Department, counsel used them to craft the narrower February 2 and February 16 Subpoenas.

The February 23 Subpoenas, which are now before the Court, include both a broad version—substantively identical to the November 27 Subpoena—and a narrower version, limited to what counsel previously described as "the complete universe" of relevant claims. The Court will compel CMS to produce the documents and data described in the narrower subpoena only. Plaintiff-relators' suspicion that they do not yet have an exhaustive list of the names and billing identification numbers associated with the Outpatient Radiology Department cannot justify a subpoena that they themselves recognized as so overbroad as to be a "waste[ ] of time." If the list is incomplete, defendants will be required to supplement it. *See* Fed. R. Civ. P. 26(e)(1)(A) (party must supplement or correct a discovery response upon learning that it is materially incomplete or incorrect).

## CONCLUSION

For the foregoing reasons, plaintiff-relators' motion to compel is GRANTED with respect to their narrower February 23, 2016 subpoena to CMS (Dkt. No. 100–1, at 8–12), limited to the time period January 1, 2007 through February 1, 2011. The motion is DENIED with respect to any other subpoenas to CMS.[9]

The Court ORDERS AND COMPELS the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, to disclose to plaintiff-relators the records requested in the subpoena described above, including records protected from disclosure by the Privacy Act, 5 U.S.C. § 552a *et seq.,* and regulations. As previously directed, any and all documents that CMS discloses pursuant to this Memorandum and Order shall be designated CONFIDENTIAL MATERIAL as that term is used in the Consent Discovery Confidentiality Order entered on December 7, 2015, shall be used solely for the purpose of litigation of this case, shall not be shown or communicated in any way inconsistent with the Consent Discovery Confidentiality Order, and shall be destroyed at the conclusion of this litigation.

**SO ORDERED.**

---

**9.** In addition to the seven subpoenas served on CMS from November 27, 2015 through February 29, 2016, plaintiff-relators served a series of subpoenas on the New York DOH for Medicaid claims data. The Court was informed, however, that DOH has already responded to one or more of those subpoenas. Consequently, only the CMS subpoenas are before the Court at this time.